# B. Nuding and H. R. Schlouch, Appellants, *v.* Anna C. Urich.

*Earnings of married women—Contract between husband and wife—Acts of 1887 and 1893.*

Where a husband consents to the employment of his wife and agrees that the wages shall be paid to her, she can recover them as against him, and he forfeits and surrenders to her any claim that he might otherwise have to them.

A husband may contract directly with his wife for the performance of extra and unusual services in the course of his business outside of the family relation, and such contract will be deemed a waiver by him of all claim to her wages, and she will be entitled to be paid for such services out of the proceeds of a sale of her husband's property.

Personal services are a species of personal property; and as earnings represent the reward for such services, whether in money or chattels, it would seem that they may be "acquired" or "owned" or "possessed," within the fair meaning of the first section of the act of June 8, 1893, P. L. 344. The word "acquire" in the act of 1893 includes everything included in the word "earned" in the act of 1887, P. L. 332. The act of 1893 was intended to place the rights and powers of married women upon a broader, more comprehensive and better defined basis than was accomplished by the act of 1887.

Argued Feb. 6, 1895. Appeal No. 246, Jan. T., 1894, by plaintiffs from judgment of C. P. of Lehigh Co., April T., 1893, No. 150, setting aside the report of the commissioner upon claim for wages out of fund realized by sheriff's sale. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

WILLIAMS and MITCHELL dissent.

Exceptions to the report of the commissioner. Before AL-BRIGHT, P. J.

It appeared upon proceedings had in the court below that Samuel Urich was the proprietor and owner of the stock and fixtures in a licensed restaurant in the Lehigh Valley Railroad station at Allentown. Plaintiffs obtained a judgment against him in the court of common pleas of Lehigh county for two thousand dollars, upon which an execution was issued, his stock and fixtures levied upon by the sheriff and sold for the sum of $411.09 and costs. Prior to the sheriff's sale, Annie Urich, the

defendant's wife, presented a claim to the sheriff for $108, which she claimed was due her out of the proceeds of sale for wages under a contract with her husband for work as cook in his restaurant.   The commissioner appointed to distribute the fund found the wife's contract with the husband was invalid, and awarded the money to plaintiffs in the writ.   Exceptions were filed which the court below sustained in an opinion of which the following is part:

"The fund in court is a portion of the proceeds of the sale under a fieri facias of said plaintiffs against said defendant of the stock and fixtures owned by defendant in a restaurant in the Lehigh Valley Railroad station building at Allentown, kept by defendant.   Annie C. Urich, wife of defendant, by a sufficient notice, regularly given, claimed $108, alleged to be due her out of said business for wages, for services as a cook.   The only question raised before the learned commissioner and in court is the legality of the contract made by said husband and wife for the payment of said wages.

"The relevant facts found by the commissioner in the supplemental report and not disputed on exceptions, are: That on Aug. 1, 1893, defendant's manservant at the restaurant left, and he thereupon contracted with his said wife to take said servant's place—he offered to pay her the same wages he had paid to said servant—$3.00 a week; the wife accepted and did the work of a servant from said date to November 13th of that year, being 15 weeks, for which $45.00 is claimed.   That at the time last aforesaid the man who had been employed as cook at $7.00 a week also left, and thereupon defendant and his wife made a new contract by which the latter in addition to her former work was to do the cooking for the restaurant and to receive for all such services $7.00 a week; that she did perform said services until Jan. 24, 1894, for which $63.00 is claimed; that nothing was paid; that during said period said parties lived together as husband and wife; that said contract was made in good faith; that the wages contracted for were reasonable, and the services rendered were worth the sum claimed.

"The court finds to be a further fact what the commissioner states to be the testimony in the first report, that is: 'That during these six months (for which compensation is claimed)

Mrs. Urich and the children (of said husband and wife) took their meals or most of them at the restaurant, and that they also slept there, removing to the restaurant some of their household goods, and leaving the rest at their former residence on Lehigh street, that an adult daughter took care of the residence, that the same was at times occupied by the children, and that at other times they remained at the restaurant with their parents.'

" The commissioner was of the opinion that a husband is entitled to the person and labor of his wife, and to the benefit of her services, industry and economy, whether rendered in the management of his household or in the conducting of his business, or both; that in this regard the common law is unchanged by statute, and that said contract is invalid and not enforceable. . . . The bare question is whether the act of 1893, relative to husband and wife (P. L. 344), authorizes the said contract.

" That it would have been void before the passage of the Married Person's Property Act of 1887 (which is replaced by said act of 1893) is not doubted.  For after the act of 1848 the earnings of a wife, the result of her skill, credit or industry, as before, belonged to the husband: Robinson v. Wallace, 39 Pa. 129. . . .

" The contract here in question being authorized by said act of 1893 must be upheld.

" Jan. 7, 1895, the exceptions to the commissioner's reports are sustained, and the distribution in the supplemental report is modified by distributing $108 to Annie C. Urich, and $10.35 instead of 118.35 to Nuding and Schlouch."

*Error assigned* was distributing the money to Annie C. Urich.

*T. F. Diefenderfer, C. J. Erdman* with him, for appellants. —The word " earned " is excluded from the act of 1893: Act of June 8, 1893, P. L. 344; act of May 12, 1891, P. L. 55.

*James B. Deshler*, for appellee.—A married woman can make a valid contract with her husband to perform manual labor for. pay in and about his separate business: Married Person's Property Act of 1887, P. L. 332; Act Relating to Husband and

Wife, 1893, P. L. 344; Steffen v. Smith, 159 Pa. 207; Gockley v. Miller, 162 Pa. 271. The act of 1893 has replaced the act of 1887, and has enlarged the contract power of married women over the earlier act: See title of act and act of June 8, 1893, P. L. 344; Jobe & Meanor v. Hunter et ux., 165 Pa. 5; Lewis's Est., 156 Pa. 337; Moyer's App., 77 Pa. 482; Zeigler's App., 84 Pa. 342.

OPINION BY MR. JUSTICE GREEN, July 18, 1895:

If Mrs. Urich had been employed by a stranger to perform the same services that she rendered in this case, and for the same wages, and her husband had consented to such employment, the wages to be paid to her, there can be no doubt she would have had a valid legal title to the earnings, and could have sustained her claim against his will although he might subsequently have claimed the wages on the ground that he was the owner of her earnings as her husband. And the reason why she could recover them as against him would be because he had so contracted. In other words his legal right to her earnings in the absence of a contract, would be gone because of the contract made between him and her. Where he agreed that she might have the earnings he certainly forfeited any claim that he might otherwise have to them and thereby surrendered such claim to her. If now he makes a contract directly with his wife, that he, having occasion for extra and unusual service in the course of his business outside of his family relation and needs, will pay his wife for the performance of such service the special wages which otherwise he would be obliged to pay to strangers, it is at least true that, so far as he is concerned, he has surrendered to his wife all claim to be the owner of her services, and therefore, of the compensation which he has agreed to pay her. His consent that she shall receive the compensation for the service, certainly divests the case of the aspect, that he, as the owner of her services, and therefore of her earnings, is entitled to both, against her will, and that element of the contention is removed from the argument. What then is left? Nothing but the proposition that a husband and wife cannot make such a contract. Why not? There is nothing in the act of 1893 which gives her a contracting power that denies or restrains her right to contract with her husband. The sec-

ond section of the act, P. L. 344, act June 8, 1893, provides that " Hereafter a married woman may, in the same manner and to the same extent as an unmarried person, make any contract in writing or otherwise, which is necessary, appropriate, convenient or advantageous to the exercise or enjoyment of the rights and powers granted by the foregoing section," (sec. 1,) but she may not become accommodation indorser, nor execute a deed without joining her husband.   Here is a very large con-, tracting power conferred with only special restrictions which do not embrace the pending question.   Within her limitations a married woman may contract to the same extent, and in the same manner as an unmarried person.   The first section defines the subjects of her contracting power thus : " that hereafter a married woman shall have the same right and power as an unmarried person to acquire, own, possess, control, use, lease, sell or otherwise dispose of any property real, personal or mixed, and either in possession or expectancy," etc.

The word " earnings " does not appear in this act, but as personal services are a species of personal property, it would seem they may be sold, and as earnings represent in common speech the reward for such services, whether in money or chattels, it would seem that they may be " acquired," or " owned," or " possessed," within the fair meaning of the section.

In Lewis' Estate, 156 Pa. 337, we held that under the act of 1887 the earnings of a married woman were a species of property and belonged to her and not to her husband, and we all agreed that she should have them, where they were the reward of her personal service ; her title to them was absolute and she could recover them in an action without joining her husband. We do not think the act of 1893 was intended to restrain the meaning of the act of 1887 but to stand as a substitute for it, and with power and authority, and contracting capacity of married women, at least equal to that which was conferred by the act of 1887.

The word " acquire," in the act of 1893 we think includes everything that would be included in the word " earned " in the act of 1887.   A reading of the two acts together indicates clearly that the later one was intended to remove some doubts about the construction of the first, and to place the rights and powers of married women upon a broader, more comprehensive

and better defined basis than was accomplished by the act of 1887. The title of the act of 1893 expressly states as one of the objects of the act, the "enlarging her capacity to acquire and dispose of property."

In the present case everything that could be done was done by the husband to enable the wife by her own personal service to acquire for herself alone the reward of that service, and no rights of his, independent of contract, are in the way of her recovery. We agree with the learned court below in the views expressed upon this subject and therefore affirm the decree.

Decree affirmed and appeal dismissed at the cost of the appellants.

WILLIAMS and MITCHELL, JJ.:

We dissent from this judgment. If it be conceded that the alleged contract is good between the parties it is not good as against the husband's creditors.