Ponevyezh Building and Loan Association, Appellant, *v.* Shandelman et ux.

424

Argued September 29, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and JAMES, JJ.

*Frank A. Simons*, and with him *Louis Halprin*, for appellant.

*Herbert M. Levy*, and with him *Joseph H. Sundheim*, for appellee.

OPINION BY PARKER, J., February 1, 1934:

This is an appeal from an order of the court below making absolute a rule to show cause why a judgment by confession against the defendant should not be opened. As the appellant contends that there was not sufficient evidence to warrant the opening of the judgment, it is necessary for us to state the substance of the testimony.

The defendant having admitted the execution of the bond, the judgment is presumably valid, although she was a married woman at the time (Abell v. Chaffee, 154 Pa. 254, 26 A. 364; Nuding v. Urich, 169 Pa. 289, 32 A. 409); and she must show affirmatively not only

the fact of her marriage, but also the presence of those circumstances which would relieve her from liability: Kolf v. Lieberman, 282 Pa. 479, 128 A. 122. The circumstances alleged by the defendant are that she had no knowledge that a deed to her for the premises had ever been made, delivered, or recorded; that she had no knowledge of the details of the business of her husband; that whenever her husband desired to use her name in any transaction, she gave it willingly upon his mere requests and that she was surety for her husband.

Isadore Shandelman and Jennie Shandelman were married in 1911 and lived as husband and wife until his death on October 22, 1931. Just prior to July 21, 1927, the plaintiff building and loan association had purchased at sheriff's sale three properties in the City of Philadelphia, but a deed had not yet been made by the sheriff. At a regular meeting of the building and loan association the husband, a director and officer therein, stated that he had a buyer for the properties who would pay to the association the sum of $6,275.85, and all taxes, water rent, and interest on existing first mortgages, provided the association would grant a loan of $2,000 on each of the properties, subject to existing mortgages of $3,000 on each. The directors authorized the conveyance of the properties and the grant of the loans thereon. Pursuant thereto the premises were conveyed by the sheriff to a straw man and that person in turn, on July 21, 1927, conveyed the three properties to the defendant. Coincident with the delivery of the deed, three bonds and mortgages were given to the plaintiff association signed by Jennie Shandelman and Isadore Shandelman. The difference between the amount of the building and loan mortgages on the three properties and the price to be paid was settled by the payment of $810.87 by a check of Isadore Shandelman. It was on one of these bonds that the judgment in controversy was entered. Each

of the mortgages, after describing the premises, contained the following recital: "Being the same premises which Frieda P. Gneiting by deed dated the 21st day of July A. D. 1927, and now lodged for record in the office for recording of deeds in and for the County of Philadelphia, granted and conveyed unto the said Jennie Shandelman, in fee."

On January 18, 1928, a letter was written to Harry E. Thompson, agent for the first mortgage holder, signed "Mrs. Jennie Shandelman" on a typewriter. This letter acknowledged receipt of a card requesting her to call at the office, advised Mr. Thompson it was inconvenient, and requested him to send a paper extending the mortgage to her house for her signature. He replied on January 20th by letter addressed to her that it would be necessary for her to come to the office to execute the papers. She denied any knowledge of this correspondence, but she did go to Mr. Thompson's office on January 26th and entered into agreements with the mortgagees in the first mortgages for extensions. In these agreements she recited that she was the owner of the premises mortgaged and requested the mortgagees to extend the loan. Prior to the conveyance to her of title to the three properties, these had been owned by one Frankel who had failed to pay the taxes for 1926. In 1928 she brought suit in the municipal court of Philadelphia to recover from Frankel the amount of delinquent taxes paid by her and which she claimed should have been paid by him. In a statement of claim sworn to before a notary public, she averred that she had purchased the properties at sheriff's sale and was the then registered owner thereof. Prior to the death of the husband in 1931, he collected the rents through a real estate agent and paid taxes, insurance, interest on the first mortgages, and payments into the building and loan association. It further developed on the taking of the testimony that the shares of stock in the building and loan asso-

ciation assigned as collateral security for the loan were placed in the name of the husband through error and that he had been requested prior to his death, when the error was discovered, to make a transfer thereof to his wife. Mrs. Shandelman testified that she could read and write her name but could not do any other writing and that she did not have any bank account in her own name.

"If a party who can read, as Mrs. Greenfield [Mrs. Shandelman] could, will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law. At law, it certainly is not": Greenfield's Est., 14 Pa. 489, 496. In the face of the evidence, much of it in writing and for the most part undisputed, it is idle for the petitioning defendant to claim that she did not know the title to these premises had been placed in her name. She not only signed a mortgage which in writing declared she was the owner, but she executed three writings providing for the extension of the first mortgages in which she likewise alleged she was the owner of the premises and then instituted proceedings in court in which she solemnly swore that she was the owner of the premises and made such statement the basis of her suit to recover taxes from a former owner. Not only so, but the credibility of the defendant was seriously affected by her statements that she did not know she held title to this real estate. She also admitted her signature to the mortgage, the extension, and the statement of claim in the suit, but denied that the notaries who had attested her signature in each case had in fact done so.

The remaining items of evidence offered by the defendant to support her petition were the contributions apparently made by the husband and the fact that the

building and loan stock was in his name. There was not only no evidence that the husband was insolvent, but he was apparently in business as a manufacturer of dresses. Being solvent, he had a right to make a gift to his wife and permit her to take title to the property, and she was under no disability that prevented her from accepting the title. As she did not have a bank account, it was not unusual that he should have collected the rents and paid the expenses therefrom. The wife admitted that she assisted her husband in his business, visiting the store constantly. While it is true that the law will brush aside disguises for the purpose of discovering evidence of suretyship, there must be substantial evidence pointing to such relation. The mere fact that a mistake was made in issuing the stock in the name of the husband would not affect the right of the building and loan association to recover the principal with legal interest, and no question has been raised here as to the amount of the judgment. The loan was given in payment for the property which the wife willingly and knowingly took in her own name.

Nevertheless the appellee contends that the case is ruled by that of Stahr v. Brewer, 186 Pa. 623, 40 A. 1016. A comparison of the two cases discloses a marked difference. In the Stahr case the proofs showed that the husband, with his wife's general knowledge, conducted a business of buying, selling, and improving real estate, taking the property in his wife's name but without any money being contributed by her, and that whenever her name was wanted to be used in any of the transactions, she gave it willingly upon his mere request. So far there is some resemblance in the two cases, but it further appeared in the Stahr case that the husband was insolvent and the fair inference was that he was carrying on transactions in real estate for the purpose of avoiding his own creditors. It was also contended that he had contracted

a debt in his own name and that for such debt the wife gave her judgment note signed by her alone. One of the disputed points was whether the money actually went into the properties which stood in the wife's name. In disposing of the matter the court said (p. 628): "We do not think that it can fairly be said of such testimony as this that it raises no questions of fact to be submitted to a jury respecting the debt in question. Without discussing it now, for obvious reasons, it seems to us that it does raise, not merely the question of agency for the wife, if the transactions are to be regarded as legally hers, but also the question whether she received full consideration for the judgment, and the still more important question, whether the whole business was not a mere contrivance to use his wife's name, not because the properties were really hers, but in order to shield them from the claims of his own creditors." This presented a very different situation.

In the instant case there is no evidence of the insolvency of the husband. For reasons best known to the husband and wife themselves, title was taken in her name with her consent. She had a right to purchase real estate if she wished to do so. There was not here, as in the Stahr case, an issue as; to whether the funds which the obligation represented went into the property. There was certainly no previous indebtedness of the husband to the plaintiff as the consideration for the bond and nothing to indicate that the plaintiff in any manner induced the wife to sign the bond or understood that she signed as surety. On the contrary, the written evidence indicates here full intention to take title to the property and pay for it in part with the proceeds of the loan from the plaintiff. See Algeo v. Fries, 24 Pa. Superior Ct. 427. The evidence falls short of the measure of proof required to open the judgment.

The order of the lower court is reversed, and it is directed that the petition to open the judgment be discharged.