In re DOMENIG.

(District Court, E. D. Pennsylvania.    March 1, 1904.) .

No. 1,431.

1. BANKRUPTCY—PROVABLE DEBTS—CLAIM OF WIFE FOR SERVICES.
Under the Pennsylvania statute of 1893 (P. L. 344), which permits a wife to contract directly with her husband for payment for her services rendered in his business outside the family relation, the wife of a bankrupt may prove a claim for services rendered under such a contract against his estate in bankruptcy.

2. SAME.
The Pennsylvania statute of 1893 (P. L. 345, § 3), providing that a wife, may not sue her husband, except for divorce or for recovery of her separate property after his desertion, does not prevent her from proving a claim against his estate in bankruptcy, which is not a proceeding against him, nor even adverse to him.

3. SAME—COMPETENCY OF WIFE AS WITNESS.
The Pennsylvania statute of 1887 (P. L. 158, § 2b), which forbids husband and wife to testify "against each other," does not render the testimony of a wife incompetent in support of a claim filed by her against her husband's estate in bankruptcy.

In Bankruptcy.    On certificate from referee.

Alfred Heymann and Samuel J. Ephraim, for claimant.
Benjamin Alexander, for trustee.

J. B. McPHERSON, District Judge.    The facts of this case appear in the following extract from the opinion of the learned referee:

"Louisa Domenig, wife of the bankrupt, has filed proof of debt, claiming the sum of four hundred and sixteen dollars ($416) for wages at eight dollars per week from August 27, 1901, to August 25, 1902. Of this sum the sum of one hundred and four dollars ($104) is claimed as entitled to priority, the same being earned within four months before the date of the commencement of the proceedings.

"The claimant testified in support of her claim, and it was agreed that her husband, the bankrupt, would testify in corroboration of her evidence.

"The trustee and creditors have not offered any evidence.

"The claimant testifies that she was married to the bankrupt in 1892, and afterwards was separated from her husband. How long she lived separate from her husband is not shown by the testimony. The evidence is that on the 25th day of August, 1901, she returned to her husband to live with him, and she says that her husband wanted her to come back, and she said she would, provided that he would make a settlement with his creditors, and move away from the place where they were living. Her evidence is as follows:

"'I told him he never gave me any money, and if he would promise me he would give me a certain amount I could see my way clear to come back, and he said, "Yes."

"'Q. What amount did he promise?

"'A. First he said ten dollars; but I said on account of the way business went I would take eight.

"'Q. In consideration of the eight dollars, what were you to do?

"'A. Take care of the house, put up lunches, tend bar, and everything else when he was away, which I did.'

---

¶ 3. Federal courts following state practice as to competency of witnesses, see notes to O'Connell v. Reed, 5 C. C. A. 594; Bank of California v. Cowan, 21 C. C. A. 278.

"She testifies that when he was away from the saloon she took charge of the bar; that she generally attended bar three times a day, and sometimes oftener; that if her husband had business down town she was there (at the saloon) every day; that she cleaned the saloon.

"She also testifies that the sum of eight dollars was to be hers, and that her husband allowed her the money needed for conducting the house in addition to said sum of eight dollars.

"She testifies that she had employment when her husband proposed that she should return and live with him, and that it was upon the strength of the promise to pay her eight dollars a week that she returned to him. She testifies that her husband did not pay her any money whatever for the services she rendered.

"The liquor saloon which her husband conducted was at the corner of Girard avenue and Germantown avenue, and during the time for which the wages are claimed the claimant and her husband kept house at 1131 Germantown avenue, which house is about half a square distant from the saloon.

"The claimant further testifies that during the year in question her husband did not employ a bartender or any other help in the saloon; and that when her husband was absent she was there to attend bar.

"She states that she went to this saloon every day three times; that she went to 'clean out the place' and to relieve her husband while he went home to get his meals; and that she prepared the cold lunches which were served at the saloon, and carried them in a basket from the house to the saloon."

In the similar case of Nuding v. Urich, 169 Pa. 289, 32 Atl. 409, the Supreme Court of Pennsylvania has decided that "a husband may contract directly with his wife for the performance of extra and unusual services in the course of his business outside of the family relation, and such contract will be deemed a waiver by him of all claim to her wages, and she will be entitled to be paid for such services out of the proceeds of a sale of her husband's property." This conclusion is based upon the court's construction of the act of 1893 (P. L. 344), which relates to husband and wife, and enlarges her capacity to acquire and dispose of property. In New York a statute upon the same subject, but not in the same language, has been held insufficient to justify a similar conclusion: Re Kaufmann, 5 Am. Bankr. Rep. 104, 104 Fed. 768. But in this court Nuding v. Urich should be followed as an authoritative construction of the Pennsylvania statute. It is urged, however, that the claimant was an incompetent witness—this point was not raised in Nuding v. Urich—and the third section of the act of 1893 is relied upon to support this position. That section is as follows:

"Hereafter a married woman may sue and be sued civilly in all respects and in any form of action and with the same effect and results and consequences as an unmarried person, but she may not sue her husband, except in a proceeding for divorce, or in a proceeding to protect and recover her separate property whensoever he may have deserted or separated himself from her without sufficient cause, or may have neglected or refused to support her, nor may he sue her, except in a proceeding for divorce, or in a proceeding to protect or recover his separate property whensoever she may have deserted him, or separated herself from him without sufficient cause, nor may she be arrested or imprisoned for her torts." Page 345.

In my opinion, this section does not apply, for the claimant does not "sue" her husband when she seeks to share in a fund that is being distributed among the creditors of his insolvent estate. Her real contest is with the other claimants, whose shares will be diminished if she succeeds, and her husband has not the slightest direct pecuniary interest in the result. A discharge in bankruptcy will extinguish all his debts, her debt among the rest, and it is of no importance to him

how the insufficient fund is divided. If he has any interest at all, it is indirect, and is not antagonistic to her claim, for it arises out of the probability that he may profit personally to some extent by the money that she may recover. Nor does the act of 1887 (P. L. 158, § 2b), which forbids husband and wife to testify "against each other," render her incompetent as a witness, assuming the act to apply in a federal court. This clause was considered by the Supreme Court of Pennsylvania in Norbeck v. Davis, 157 Pa. 399, 27 Atl. 712, and was decided not to disqualify her in a dispute where interpleader proceedings had been begun to determine the ownership of goods that had been seized as the husband's property, but where he had disclaimed ownership, so that the real contest was between the wife and the execution creditor. The court said, on page 405, 157 Pa., page 713, 27 Atl.:

"Without doubt, in a contest between her and her husband as to the ownership of the property, she would have been incompetent. Public policy in such case determines the incompetency. Such antagonism promotes marital discord; therefore the law will not tolerate it. By the fifth section of the act of May 23, 1887 [P. L. 159], the policy of the law in this particular is restricted to cases where they offer to testify against each other. Are they in that attitude here? The husband is the defendant in the execution, and the creditor alleges the property seized belongs to his debtor; but the debtor, the husband, disclaims all ownership, and alleges it is his wife's. How does she testify against him when she asserts a right which he concedes? She claims and he disclaims the property. The creditor's averment of title in him does not constitute him the owner. The fact that seizure, under execution, if consummated by sale, will result in payment of part of his debts, does not establish title in him. If the husband actually claimed the property, and was on the side of the execution creditor, then the antagonism which the law contemplates would exist, and render the wife incompetent. But the law does not close her mouth as a witness solely because she is the wife of a debtor whose creditors have seized her property to satisfy his debts. Contention must result from the individual hostile assertion of property in the same thing, before the 'against each other,' which disqualifies, can be said to exist."

And in Suplee v. Laflin Mfg. Co., 21 Wkly. Notes Cas. 557, the present Chief Justice, then on the common pleas bench of Philadelphia county, stated the reason for the rule of incompetency as follows:

"Husband and wife are excluded from testifying against each other on grounds of public policy, for the sake of domestic peace. The rule making parties incompetent to testify has been wholly removed by statute, and that in regard to husband and wife is confined to cases where domestic discord would result."

Undoubtedly, contracts of this kind between husband and wife ought to be scrutinized with the utmost vigilance, and should never be allowed unless the evidence is clear and convincing in every particular. Ordinarily there is little evidence to support them, except the testimony of the husband and the wife themselves, and the husband is usually interested nearly as much as the wife in favor of her claim. Much will necessarily depend on the manner of the witnesses while under examination, and referees should feel themselves obliged to consider of their own motion the credibility of the witness, and of the story that is told, even if there should be no opposing testimony. The mere fact that the witness has not been contradicted does not require the acceptance of the testimony. In the present case the referee has found that the contract was made, and I see no sufficient reason for setting his finding aside.

The order of the referee is approved.