# Standen v. Pennsylvania Railroad Company, Appellant.

214    189|
f39SC³189|

*Negligence—Trial—Evidence—Request for instructions—Disinterested witnesses—Interested witnesses.*

Where, in an accident case, one disinterested witness confirms the plaintiff's account of the accident, and one disinterested witness called for the defendant, contradicts it, the defendant's counsel may, if he deems it important that the court should explain to the jury the relative value and weight of the testimony of interested and disinterested witnesses, direct the attention of the court to the matter by presenting a point, or call attention to it orally at the conclusion of the charge. If he fails to do so he cannot subsequently complain of the lack of instructions on this point.

*Negligence—Damages—Wife's services—Husband and wife.*

In a joint action by a husband and wife to recover damages for injuries to the wife sustained by reason of the alleged negligence of the defendant, the husband is entitled to show as an element of his damages the value of his wife's services in the assistance which she gave to him in his business as a florist.

The legislation in force in Pennsylvania vests in a married woman all earnings acquired by her in carrying on any separate or independent business, or in performing any labor or services on her sole and separate account; but it does not affect or change the common-law rule which vests in the husband the earnings of the wife acquired in her capacity as wife for services rendered about her household duties, or when assisting her

husband in his business. In the absence of an agreement to the contrary, such earnings continue to belong to the husband, and neither his wife nor her creditors can assert a right to them by an action at law, or otherwise.

Argued Jan. 19, 1906. Appeal, No. 227, Jan. T., 1905, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1902, No. 430, on verdict for plaintiff in case of Henry G. Standen v. Pennsylvania Railroad Company. Before MITCH-ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BEITLER, J.

At the trial the plaintiff offered evidence which tended to show that on August 3, 1901, she was injured at the Haverford station of the defendant by a sudden jolt and start of the train when she was attempting to alight. Mrs. Standen lived with her husband at Haverford in a house connected with green-houses in which her husband conducted a florist business. The evidence showed that the plaintiff, Mrs. Standen, assisted her husband in this business.

When Henry G. Standen was on the stand, he was asked this question:

" Q. To what extent was your wife able to be of assistance or of service to you? "

Mr. Barnes: I ask for an offer what they propose to prove.

Mr. Porter: We offer to prove by this part of the testimony and by this witness on the stand that his wife previous to the accident was of service to him, or to what extent she was an aid, comfort, and of assistance to him.

Mr. Wiler: " Q. Now, Mr. Standen (question repeated), to what extent was your wife able to be of assistance or of service to you? "

" A. She would do her own household duties—do her own washing and ironing—and while I was not working she would attend to the greenhouse; yes, and pot plants and hybridize seed and propagate and make cuttings, and from the knowledge I obtained during my seven years' service in the royal nurseries in England ——." 

Mr. Barnes: I now object to the immediately preceding part

and as to what the witness is about to say; and I move that so much of the answer be stricken out as applies to the duration of the work by the wife in their combined business.

Objection overruled and motion refused.

Exception for defendant. [1]

Mr. Barnes: "Q. Now, there is included in this sum of money which you have named an extra man or men? A. Extra man. Q. Man? A. Yes. Q. $1,676.66? A. Yes; that is wages I paid to the extra man taking Mrs. Standen's place in the greenhouse."

Mr. Barnes: If the court please, I ask that that item be deducted, be stricken out; that is the same question.

The Court: I will overrule the objection and give you an exception; that raises the question fairly and squarely.

Exception for the defendant. [1]

Defendant presented these points:

5. If the jury should find a verdict for the plaintiff, Henry Standen, it cannot, under the evidence in this case, award any damages to him for loss of services of his wife, because of the fact that prior to the accident she took part in the business of florist carried on by him, and that since the accident she had not been able to assist him in the business. [2]

6. If the jury find a verdict for the plaintiff, Henry Standen, it cannot award to him as damages any amount which he was required to pay as wages to additional or extra men employed by him to do the work in his florist business formerly done by his wife. *Answer:* Of course, gentleman, you have got to treat that matter if you come to find a verdict for the plaintiff, in a reasonable way. This man says his wife did his washing, ironing, looked after all the children, and I think she had five of them, and in addition to that helped him in the florist business—potted and so on. Now, I don't know what the experience of most men is, but my experience would teach me that a woman who did the washing, ironing, cooking, and attended to five children would not have very much time to look after the florist business in addition to that. Hence, when a man says, "I want you to pay me for a housekeeper to do the housework my wife used to do, and I want you to pay me for a man in the greenhouse," it is manifest she did not work six days a week at home and six days a week in the greenhouse; she

could not be in two places at the same time. Hence it would hardly be fair to charge the defendant for a man and house-keeper both. [3]

The court charged in part as follows:

[Now, I will pass to the question of whether there is liability. I said yesterday when Judge PORTER was arguing the case, and I say it now, in order that it may go down upon the minutes, that in my judgment the plaintiffs' case practically rests upon the uncorroborated testimony of Mrs. Standen. Let me read her testimony. It has been read to you this morning, but I want to read it in conjunction with the testimony of Mr. Gallagher. Now, this lady was asked, "Tell us what occurred when the train arrived at Haverford." She is the woman who was hurt; she is the woman who is suing here for damages, and it was her duty, of course, to tell all that occurred as far as she could. She starts, not where one would imagine a person would start, with a statement of how she arose, when she arose, but she says, "I was getting off the car, the car next to the last car, at the rear end of the car, when the train started with a jolt, and threw me back on the steps." There is no statement there of how far down the steps she had gotten. Unless she was part way down the steps the jolt would not have thrown her back on the steps; it would have thrown her back on the platform. Yet it may be that she meant by "steps" to include the whole thing outside of the doorway. (Continuing reading.) "I don't remember nothing after that until a gentleman picked me up—was assisting me and giving me my caba and a small package I had with me." She does not give the gentleman's name, and if I have read her testimony accurately, she does not mention the fact that Mr. Gallagher mentioned here, that he gave her a card. If I am incorrect as to that, counsel will call my attention to it. She says with regard to getting up, "I sat in my seat until the train came to a full stop; I did not loiter; I used the same speed in getting off the car as I generally used."

Now, Mr. Gallagher says that he got off the train, and looking around discovered that he was at the wrong station. "And I turned around towards the car again and seeing the mistake, I turned around to the car to go, and I saw the cars give a jolt, and I just had a glance of a woman falling from the

car; and I turned around, and I saw it was a woman; and I turned around and picked her up, and carried, helped her over to one of the benches; and I went back again and I picked up her parcel and her bag, and placed it alongside of her; and I asked her if she was hurt, and she told me she did not know quite yet whether she was hurt or not. I said after a few minutes, I said again, ' You could go home?' and she said, 'I think I can,' and so I went then to Bryn Mawr." He spoke of a crush or a jolt, and in answer to the question, "Describe what the crush was," he said, " The starting up of the car, and moving it from the top they gave a jolt to go."

Continuing reading. "Q. Then what did you see? A. I saw a shadow in the back of me, and I turned around quick and see it was a woman, turned back here. Q. Did the car go on then? A. Yes. Q. That was the train starting on its forward course? A. Yes."

Now, on the part of the defendant, evidence is presented to show—and it is for you to give the weight that you think proper to it—to show that that train in its due course stopped at Haverford station; that it was a local, stopping at every station between Paoli and Philadelphia; prior to reaching Haverford announcement was made that the next stop would be Haverford; when the train reached Haverford announcement was made that that stop was Haverford; that the train stopped to let off a number of people; that it was the occasion of a half holiday, in August; and that it was a main line train, a local. Mr. Kincaid, Mrs. Baird, and perhaps others I do not recall whether others testified to that or not—testified, not all to one complete story, but the story as taken from the testimony of the defendant's witnesses, if you believe that they are referring to the Standen incident, is that Mrs. Standen was in the car, the car was there until everybody that wanted to get off got off; that the car then started; that after it started Mrs. Standen stepped from the steps of the car onto the platform and did not fall.] [4]

[If she stepped off of that car after it had moved half a car length or a car length, and took several quick steps upon the platform, you can determine better than I, or as well as I can, what would be the effect of that upon a woman. A woman is more delicately constructed than a man, and I think

a little less properly constructed for stepping off of a moving car than a man, and yet men have been hurt by doing it. Would that account for the injury she now has? Would that account, for instance, for two broken ribs? Counsel for the plaintiffs contend that the two broken ribs practically show that the woman must have received some injury at that time other than that which possibly could have come to her by stepping from the steps of a car. That strikes me as a fair argument; and yet on the other side it is argued that there is no testimony with regard to broken ribs except the testimony of the attending physician. There is no evidence at all from the woman herself that she had any fractured ribs, nor is there anything to indicate exactly what the doctor means by the technical term "fracture." "Fracture" is a break. A rib may be broken without being broken off.; that is to say, it may be fractured, as I understand, without being broken off; but, at any rate, that is a matter for you to consider. That has been fairly argued on both sides, and it is for you to consider. It has to my mind considerable bearing upon the question of whether these people are referring to Mrs. Standen or not.] [5]

Verdict for Henry G. Standen for $10,000, and for Ruth Standen for $5,000.

The verdict for Ruth Standen was paid.

Defendant appealed from the judgment entered in favor of Henry G. Standen.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions; (2–5) above instructions, quoting them.

*John Hampton Barnes,* for appellant.—The appellant contends that the only services for which a husband is entitled to recover are those which he has a right to expect and demand of a wife as a wife, that is, for the loss of services in her domestic duties, the care of himself, his household, and his children, and not for loss of services in the conduct of his business: Bucher v. Ream, 68 Pa. 421; Lewis's Est., 156 Pa. 337; Nuding v. Urich, 169 Pa. 289; Wallace v. R. R. Co., 195 Pa. 127; McKenna v. Gas Co., 198 Pa. 31; Patton v. Conn, 114 Pa. 183;

Henry v. Klopfer, 147 Pa. 178; Kelley v. Mayberry Twp., 154 Pa. 440; Platz v. McKean Twp., 178 Pa. 601; Helsel v. Traction Co., 14 Pa. Superior Ct. 420; Reagan v. Harlan, 24 Pa. Superior Ct. 27.

The charge of the court was inadequate in failing to point out the relative value to be given to the testimony of interested and disinterested witnesses: Clark v. Union Traction Co., 210 Pa. 636.

The charge of the court improperly placed upon the defendant the burden of accounting for the injuries alleged to have been suffered by the plaintiff's wife, Ruth Standen.

*William W. Porter*, with him *Wiler & Elliot*, for appellee.— The law seems perfectly well settled that, notwithstanding the various acts securing to married women their property or earnings, where she willingly renders her husband assistance in not only his household but his business, he is entitled to recover for the loss: Raybold v. Raybold, 20 Pa. 308; Bucher v. Ream, 68 Pa. 421; Carr v. Easton, 7 Pa. C. C. Rep. 403; Readdy v. Shamokin Boro., 137 Pa. 98; Kelley v. Mayberry Twp., 154 Pa. 440; Platz v. McKean Twp., 178 Pa. 601; Blaechinska v. Howard Mission, 130 N. Y. 497 (29 N. E. Repr. 755); Cregin v. R. R. Co., 18 Hun, 368; Ry. Co. v. Twiname, 121 Indiana, 375 (23 N. E. Repr. 159).

It must be conceded that either the wife or the husband is entitled to damages for loss of earning power of the wife. The claims of the husband and of the wife were tried before the same jury. No objection was made by the wife that this item of damage was accredited to the husband. She alone could be prejudiced as to such a disposition of the item of damage. It has been held, " the two verdicts worked an apportionment of the total amount of damages and together included the expenses, the loss of services and the bodily pain and suffering:" Machen v. Railway Co., 13 Pa. Superior Ct. 642; Helsel v. Traction Company, 14 Pa. Superior Ct. 420.

OPINION BY MR. JUSTICE MESTREZAT, February 26, 1906:

We cannot agree with the defendant company, the appellant, that the court's charge imposed on it the burden of explaining to the jury the manner in which the injuries to Mrs.

Standen were received.   What was said by the court interrogatively on the subject in that part of the charge was simply for the purpose of directing the attention of the jury to the appellee's contention that, as Mrs. Standen's ribs were broken on the occasion of the accident, she was thrown off the steps of the car and did not step off while the car was in motion as claimed by the appellant.   The learned judge did not tell the jury that her ribs were broken on the occasion, but suggested in his charge a doubt of the truth of the allegation in language from which it could be inferred he did not believe they were broken at that time.   In that connection the court said : " Counsel for the plaintiffs contend that the two broken ribs practically showed that the woman must have received some injury at that time other than that which possibly could come to her by stepping from the steps of the car.   That strikes me as fair argument ; and yet on the other side it is argued that there is no testimony with regard to broken ribs except the testimony of the attending physician."   The learned judge then suggests to the jury that the woman does not say she had fractured ribs, and that the testimony of the attending physician on the subject is indefinite.   The appellant denied what the appellee alleged, that the woman's ribs were broken on the occasion when she alighted from the train.   There was, however, sufficient evidence to go to the jury on that question, and if they determined it in the affirmative, the appellee's argument, as the court suggests, was plausible that merely stepping from the car step would not cause the fracture of the ribs but that, as the appellee claims, the woman must have been thrown from the car steps by the sudden jolting and jerking of the car.   It was a serious dispute at the trial whether the testimony of some of the appellant's witnesses referred to Mrs. Standen and the occasion when she alleges she was injured or to another woman and to another occasion ; and the learned judge in this part of the charge suggests that the incident of the broken ribs might have considerable bearing on that question.   The fifth assignment is not sustained.

Where there are several disinterested witnesses whose testimony contradicts the testimony of a party himself or of any interested witness in his behalf, the trial judge should direct the attention of the jury to the fact and point out the value and

weight of the testimony of the interested witness in comparison with that of the disinterested witnesses. But we do not think that rule will, under the circumstances of this case, convict the court below of error. It was, as suggested above, an open question from their own testimony whether most of appellant's witnesses who described an accident they had seen at the Haverford station, referred to Mrs. Standen and the accident when she attempted to alight from the train and was injured. But if she was the woman and it was the same occasion, there was practically but one disinterested witness on each side who testified to the manner in which Mrs. Standen was injured. Gallagher, called by the appellee, was, so far as the evidence discloses, wholly disinterested, and notwithstanding the contention of the appellant company and the suggestion of the trial judge, we think he substantially corroborates the story of the accident as told on the witness stand by Mrs. Standen. He saw " the cars give a jolt " and the woman fall from the car, and says " this starting up of the car and moving it from the top they gave a jolt together. . . . That was the train starting on its forward course." All the witnesses called for the appellant to testify to the happening of the accident were more or less interested, except Mrs. Baird. Conceding her testimony to be in conflict with that of Mrs. Standen as to the manner in which the latter attempted to alight from the train, it is met, as we have suggested, by the testimony of Gallagher who is clearly disinterested in the result of the controversy. Under these circumstances, if the defendant's counsel deemed it important that the court should explain to the jury the relative value and weight of the testimony of interested and disinterested witnesses, he should have directed the attention of the court to the matter by presenting a point, or called attention to it orally at the conclusion of the charge. The learned counsel for appellant, after the testimony had already been submitted and he knew the witnesses and their testimony, presented to the court several requests for instructions, and if he thought it of any importance to his client that the jury should be instructed as to the relative value and weight of the testimony, he should have prayed such instructions by a proper point and they would have been given. Having had this opportunity on the present trial and, as the record discloses, there

having been a former trial of the cause, with possibly the same witnesses, resulting in a much larger verdict for each of the plaintiffs, the defendant's duty required it to pray for special instructions on the subject and not await the chance of favorable action by the jury and, being disappointed, ask this court to direct a new trial.

Another question in the case is as to the measure of damages. This was a joint action, brought under the Act of May 8, 1895, P. L. 54, by Henry G. Standen and his wife to recover damages for the injuries she sustained by reason of the alleged negligence of the appellant company. The trial resulted in a verdict and judgment for each of the plaintiffs. The appellant company paid the wife's judgment but took this appeal from the judgment entered in favor of the husband. For more than forty years, Henry G. Standen has been engaged in and has conducted the business of a florist. The greenhouses are connected with his home at Haverford. It appeared by evidence on the trial that the wife performed her household or domestic duties and in addition thereto assisted her husband in his business as a florist. He testified : " She would do her own household duties, do her own washing and ironing, and while I was not working she would attend to the greenhouses, yes, and pot plants, and hybridize seed, and propagate and make cuttings." He also testified that he had to employ a man to take the place, and to perform the services, of Mrs. Standen in his greenhouses and about his business. The husband was permitted, against the objection of the defendant, to recover for the loss of the value of his wife's services to him in his business as a florist. This is assigned for error.

The appellant contends, as stated in his printed brief, " that the only services for which a husband is entitled to recover are those which he has a right to expect and demand of the wife as a wife, that is, for the loss of her service in her domestic duties, the care of himself, his household, and his children, and not for loss of services in the conduct of his business."

At common law, the husband, during the existence of the marital relations, was entitled to the services and earnings of his wife. It was held by this court that at common law the husband was entitled to the person and labor of his wife and the benefits of her industry and economy : Raybold v. Raybold, 20

Pa. 308. He also had a right to the joint earnings of himself and wife in his business: Bucher v. Ream, 68 Pa. 421. If she engaged in service outside the family he was entitled to her earnings: Hackman v. Flory, 16 Pa. 196. If his wife was injured by the negligence of another and her earning power was thereby diminished, the negligent party was responsible to the husband for the loss. It was conceded by the appellant company that such were the common-law rights of the husband to his wife's services and earnings, but it is claimed that under the present legislation in this state a married woman is entitled to her earnings while engaged in her husband's business and, to that extent, the common-law rule is abrogated. But this contention is based on an erroneous interpretation of the present, as well as of the past, legislation affecting the rights of married women. That legislation vests in a married woman all earnings acquired by her in carrying on any separate or independent business or in performing any labor or services on her sole and separate account. This changed the common-law rule and takes such earnings from the husband and gives them to the wife absolutely. The legislation, however, does not affect or change the rule as to the earnings of the wife acquired in her capacity as wife for services rendered about her household duties or when assisting her husband in his business. · In the absence of an agreement to the contrary, such earnings continue to belong to the husband, and neither his wife nor her creditors can assert a right to them by an action at law or otherwise. It is only when she engages at labor or in business in her own right and not as wife, that the statute declares that the accumulations or earnings from that labor or business shall be her property and belong to her and not to her husband or his creditors. It was not the intention of the legislation to deprive the husband of his common-law right to the earnings or services of his wife, rendered as wife, by her in and about either their domestic matters or his business affairs. For such services, she has no legal recourse against him or his estate. Such has been the interpretation placed upon the Act of June 3, 1887, P. L. 332, and also on its substitute, the present law, the Act of June 8, 1893, P. L. 344, 2 Purd. 1299. Readdy v. Shamokin Boro., 137 Pa. 98; Henry v. Klopfer, 147 Pa. 178; Baker v. North East Borough, 151 Pa. 234; Kelley v. May-

berry Twp., 154 Pa. 440; Nuding v. Urich, 169 Pa. 289; Platz
v. McKean Twp., 178 Pa. 601; Endlich & Richards on Married
Women, sec. 264.   A like construction has been given similar
statutes in other states: Blaechinska v. Howard Mission, etc.,
130 N. Y. 497; Cregin v. Railroad Co., 18 Hun (N. Y.), 368;
Ry. Co. v. Twiname, 121 Ind. 375.

As the earnings of the wife for services performed in the
business of her husband belong to the latter, any deprivation
of those earnings or any diminution or loss of her capacity to
assist her husband in his business caused by the negligent act
of the appellant company was an injury to the husband for
which he was entitled to recover in this action.   The value of
her services of which he was deprived or the extent of the
diminution of her capacity to assist him in his home and busi-
ness affairs was his loss and not that of his wife.   There was,
therefore, no error in the rulings of the learned trial judge in
this branch of the case.

As suggested by appellant's counsel, the wife received no
wages from her husband for her services in assisting him in his
business, and on the trial she claimed no damages for the loss
of such services.   This was because the husband was entitled
to her services in the absence of a contract stipulating to the
contrary, and in this action he proved their value to him and
asked a verdict compensating him for their loss.   The learned
court affirmed the appellant's seventh point for the reason, as
stated by him, " that I do not understand that the plaintiffs
are pressing for any loss of earning power by the plaintiff,
Ruth Standen."

Aside from the above reasons, the judgment must be affirmed
for the reason that the appellant was not injured by the court's
ruling that the husband was entitled to the services of his wife
in the conduct of his own business.   The act of 1895, under
which the action was brought, requires, in cases like the present,
that the action shall be brought in the name of the husband
and wife, that separate verdicts shall be rendered, one deter-
mining the right of the wife and the other verdict determining
the right of the husband, and that separate judgments shall be
entered thereon with the right to separate executions.   The
rights of both parties for the injuries inflicted on the wife are re-
dressed in one action, and the amount of damages is appor-

tioned between the husband and wife by the separate verdicts.

The requirements of the act were observed in this case and separate verdicts were rendered in favor of the wife and the husband. The appellant company alleges that the court erred in charging that the husband was entitled to recover for the loss of his wife's services, and that, therefore, the verdict of the husband was predicated on an erroneous measure of damages. Conceding that to be true, it is not the appellant who was injured but the wife, and she is not complaining. She raises no question as to the correctness of the rulings of the court, but has accepted from the appellant the amount of her judgment. The loss of her services was an element of damages to be considered and compensated for in the action, and the damages therefor must necessarily be recovered by the husband or the wife. Had the trial court sustained the appellant's contention, the effect would have been to award the damages for loss of her services to the wife instead of the husband. The ruling of the court, however, would not have diminished or affected the aggregate amount of the two verdicts. The appellant company would have the same, and no greater, sum to pay as damages resulting from the wife's injuries. It was, therefore, not injured by the ruling of the trial court on the measure of damages, and hence its appeal is without merit.

The judgment is affirmed.