# Italo-French Produce Company, Appellant, *v.* Thomas.

*Married women—Liability on note—Suretyship.*

Where two partners having an outstanding firm note, dissolve partnership, and one of the partners, becoming sole owner of the business, gives a note signed by himself and wife, to the payee of the outstanding note, and this note is accepted by the payee in lieu of the first note, and the avowed purpose of the wife in signing the note is to secure to herself a joint interest in the business with her husband, the payee of the note is under no obligation to see that the avowed purpose for which the wife gave the note is in fact carried out.

Argued April 18, 1906.   Appeal, No. 107, April T., 1906, by plaintiff, from judgment of C. P. Washington Co., Nov. T., 1905, No. 100, on verdict for defendant in case of Italo-French Produce Co. v. Katie Thomas.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Issue to determine the validity of a judgment.   Before TAY-LOR, J.

The facts are stated in the opinion of. the Superior Court.

Verdict and judgment for plaintiff.   Plaintiff appealed.

*Error assigned* was answer to defendant's point, quoted in the opinion of the Superior Court.

*James I. Brownson*, with him *John W. Donnan*, *Alvan Donnan* and *John H. Donnan*, for appellant.—A contract whereby as principal a married woman joins in purchasing an interest in a store is within the scope of the powers explicitly conferred upon her, and by so purchasing she could legally assume liabilities to the same extent as an unmarried person becoming a partner in the store : Loeb v. Mellinger, 12 Pa. Superior Ct. 592 ; Hotchkiss v. Lanphier, 9 Pa. Dist. Rep. 23 ; Spotts's Est., 156 Pa. 281 ; Steffen v. Smith, 159 Pa. 207 ; Stephan v. Hudock, 4 Pa. Superior Ct. 474.

*R. W. Irwin*, of *Irwin & Morgan*, for appellee.

OPINION BY HEAD, J., October 5, 1906 :

J. W. Thomas, the husband of the appellee, and one Spassino were partners in the mercantile business, and as such indebted to the appellant in the sum of $1,200, evidenced by a note. As a result of some arrangement, the exact character of which is a disputed question in the case, Spassino transferred his interest in the business to Thomas, who thus became sole owner. The firm note was taken up by the payment of $200 in cash and the giving to the appellant of a new note for $1,000, signed by J. W. Thomas and Katie Thomas, the appellee. The judgment confessed on this note was afterwards opened. The trial resulted in a verdict for the defendant, and judgment having been entered on the verdict, this appeal was taken.

On the part of the appellee it was contended that she never had, and never intended to have, any interest in the store; that she had no dealings whatever with the plaintiff ; received no part of the consideration of the note she signed, and expected to receive none, but signed solely and simply as surety for her husband. If the facts were as thus contended for by her, it is agreed that payment of the note could not be enforced against her, the ability to make such a contract being expressly denied to her.

The plaintiff just as stoutly maintained, and offered evidence to prove, that Mr. and Mrs. Thomas jointly undertook to buy out Spassino, so that the store would be owned by them as partners ; that to accomplish this object they had to lift and

cancel the note of the old firm held by the plaintiff, and that they jointly offered to pay $200 in cash and give their obligation for $1,000 in exchange for the note held by the plaintiff, which they could then use as so much cash in their proposed transaction with Spassino.

The learned counsel for the defendant asked for special instructions upon the law that would arise if this state of facts were to be found by the jury. The point and answer of the court, which constitute the second assignment of error, are as follows: " 3d. Even if the jury should find from the evidence that Katie Thomas and her husband represented to the Italo-French Produce Company that they were about to buy the former partner of J. W. Thomas out, and that they would then own the store jointly, and on the strength of that representation they secured an arrangement with the plaintiff by which their joint note was to be taken in lieu of the note against Thomas and his former partner, still the defendant would not be liable, for the reason that the note in suit was given in place or in payment of an antecedent debt of J. W. Thomas and his former partner, to which debt Katie Thomas was no party. Answer : A wife cannot be made liable for the antecedent debt of her husband or another by signing a note as surety for her husband, or her husband's partner in this case, upon a joint debt; but if the jury find from the evidence that the note in suit was signed by Katie Thomas under an agreement in which she purchased a part interest in the old partnership of her husband and Spassino from the retired partner, and it represents the consideration she gave for the said interest, then she would be liable on said note; and with this explanation the point is affirmed."

Since the passage of the act of 1893, which itself was the last of a series of acts of the legislature tending to emancipate married women so as to enable them to fairly meet the conditions of modern business life, it cannot be doubted that Mrs. Thomas had the full right, if she chose, to become the partner of her husband in the mercantile business. Such a partnership and each member of it would have the same rights and be exposed to the same liabilities as would any other partnership or the members composing it. She could, therefore, lawfully contract, along with her husband, directly with the owner of

the other interest for the purchase of it, and any obligation she would give to secure the payment of what she contracted to pay could admittedly be enforced against her as if she were a feme sole. It is equally clear that if the payment of cash were necessary to enable her to carry out her proposed purchase she could, with or without her husband, borrow from a bank or other lender the money required, and the obligation she would give to secure the repayment of such money, saving only, of course, a mortgage upon her real estate in which her husband did not join, would be equally incontestable. It might also happen that as part of the purchase money of property, real or personal, which she undertook to buy, she would be required to assume the payment of some outstanding obligation given by the former owner; and if she undertook to do this, such undertaking would constitute her a primary debtor, and in no sense a surety as to that debt. These principles, which we shall see have been announced by our courts of last resort, would necessarily lead to the conclusion that if Thomas and his wife had gone to the plaintiff and borrowed directly $1,000 in cash and used that to purchase the interest of Spassino, who had then, along with Thomas, taken the same money and lifted the outstanding firm note, the transaction could in nowise be questioned by Mrs. Thomas, and the note thus given by her would be enforced against her in any court. But one other question could arise, the answer to which, with what we have already stated, would enable us to reach a proper conclusion upon the question raised by the assignment of error. If a married woman, for a purpose about which she is authorized by the law to contract, borrows a sum of money, does the law cast upon the lender the necessity of seeing that the money so loaned is actually applied to the purpose for which it is ostensibly borrowed? If this were so, it can be seen at a glance that a married woman would be wholly unable to borrow money for any such purpose. Lenders would naturally decline to assume the responsibility of seeing what use was made of the money and proving it in court afterwards, under the penalty of being unable to collect their debt, and thus a married woman would be deprived of the benefits intended to be conferred upon her by the legislature.

In Hazleton National Bank v. Kintz, 24 Pa. Superior Ct.

456, Kintz conveyed to his mother, whose husband was living, certain lots of ground which were then bound by the lien of a judgment entered by the First National Bank of Hazleton against Kintz, the grantor.   After the conveyance Mrs. Kintz, the mother, and her husband executed and delivered to the bank a new note upon which judgment was entered, and the lien of the former one against the son was allowed to expire. An application was afterwards made by Mrs. Kintz to have the said judgment opened, so that she might be permitted to defend on the ground that she was a married woman, and that in signing the note she but became a surety for her son upon an antecedent debt of his own.   The court below discharged the rule, and upon appeal to this court the judgment was affirmed. SMITH, J., speaking for the court, said : " The general rule is that one purchasing under and subject to the lien of a mortgage given by his vendor is a purchaser, as between himself and his vendor, of the entire estate, and is liable to pay the mortgage as part of the purchase money due from him.   Thereafter, the relation of the vendor to the mortgagee is not that of primary debtor, but of a surety, the vendee becoming primarily liable therefor.   The same rule applies to a judgment or other incumbrance. . . . Here the grantee had full contractual capacity in this respect.   She chose to recognize the obligation incurred under the conveyance and to provide for it by an obligation under seal, voluntarily executed.   That her son still remains liable on the judgment does not affect the liability which she thus assumed."

From this it would seem to follow that if Mrs. Thomas had assumed in writing the payment of the outstanding debt of the firm, an interest in which she purchased, even if the old obligation were still held by the creditor, her assumption would constitute her, as between herself and her vendor, the primary debtor, while her vendor would become, in reality, but a surety for her.

In Spotts's Estate, 156 Pa. 281, Mr. Justice MITCHELL, speaking for the Supreme Court, says : " To hold, as is claimed, that one who lends a married woman money by discounting her note, or otherwise, must see that she actually applies it to use in her business, would be going back to that state of limited rights of property and contract which it was the object of the

married persons property act of 1887 to put an end to.    The auditor reports that her notes were discounted by the bank and she received the money, but that ' there is no evidence which proves directly what she did with the proceeds.' ⋅ It is not necessary that there should be.   One who presents a money obligation of a married woman, since the act of 1887, has made out a prima facie case, which can only be defeated by showing that the contract is one of the kinds prohibited by that act. The presumption, even in case of ·a judgment, is that it is regular and valid."   See also Steffen v. Smith, 159 Pa. 207.

If, therefore, as we must conclude from these cases, Mrs. Thomas and her husband had gone to the plaintiff and borrowed $1,000 for the avowed purpose of using it in the purchase of a business to be jointly owned by both, and had secured the same by a joint obligation like the one now in controversy, there would have been no burden on the plaintiff to see that the money was actually invested in the purchase of such a business.   If Mrs. Thomas, after procuring the money, either allowed or permitted her husband to use it in the purchase of a business for himself, she would not on this account be able to defend against the payment of the note.   That in the present case what was actually secured from the plaintiff was not money, but was the equivalent of money, something that could be used as money in the proposed transaction, is of no consequence.   The answer of the learned court, however, to the point quoted, made her liability depend, not on the purpose she avowed in procuring the loan, not on the representation by which the plaintiff was induced to give up his property, but upon the actual fact whether or not this money was subsequently applied to the actual purchase of property for her.   In other words, this answer puts upon the lender the exact responsibility which the Supreme Court, in the case last quoted, has stated does not exist.   The point as presented was clearly an erroneous statement of the legal proposition involved, and could have no other proper answer except a refusal.

The second point presented, which with the answer thereto constitutes the first assignment, does not with clearness set forth the facts which make the plaintiff's contention in the present case, as the other point does.   The answer of the

court to it we think would be fairly amenable to the criticism that, considered by itself, it would have a tendency to mislead the jury. Taken, however, in connection with the general charge, it is probable that the judgment would not be reversed by reason of that answer alone, confusing and obscure as it seems to us. The second assignment of error, however, for the reasons above given, we feel obliged to sustain.

Judgment reversed and a venire facias de novo awarded.