---

### In re COX.

(District Court, D. New Mexico. June 1, 1912.)

1. BANKRUPTCY (§ 228*)—REFEREE'S DECISION—REVIEW.

On an application to review a referee's decision in bankruptcy proceedings, all presumptions are in favor of the correctness of the referee's decision as to the facts on conflicting evidence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. § 228.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. HUSBAND AND WIFE (§ 40*)—AGREEMENT TO PAY FOR SERVICES—HUSBAND AND WIFE.

Where a bankrupt, operating a business, placed on his wife the duty of keeping the books and accounts, such act was sufficient to raise an implied promise to compensate her therefor, in the absence of an express contract to do so.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 222; Dec. Dig. § 40.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. BANKRUPTCY (§ 340*)—CLAIMS—SERVICES.**

Evidence *held* to sustain a referee's finding of a contract by the bankrupt to pay his wife a salary for her services as bookkeeper and accountant in his business.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 527; Dec. Dig. § 340.*]

**4. BANKRUPTCY (§ 116*)—WIFE'S SEPARATE PROPERTY—EVIDENCE.**

Evidence *held* to sustain a referee's decision that certain real property was the separate property of the bankrupt's wife.

[Ed Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*]

**5. BANKRUPTCY (§§ 116, 314*)—OWNERSHIP OF PROPERTY—ESTOPPEL.**

Where a statement of a bankrupt's assets, made to a bank as a basis for credit, did not show that the bankrupt was indebted to his wife for services rendered as his bookkeeper, and included certain real property as belonging to him, but no credit was extended on the faith of the statement, whereupon the husband became a bankrupt, the wife was not estopped by the statement to claim salary unpaid, and also that she owned the real property as her separate estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469-473, 478, 483-487, 489, 490; Dec. Dig. §§ 116, 314.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Isaac H. Cox. On petition to review a referee's order allowing two claims for wages filed by Cora E. Cox, the bankrupt's wife, and to review an order declaring certain real property to be the separate property of said claimant. Affirmed.

Summers Burkhart, of Albuquerque, N. M., for trustee.

M. E. Hickey, of Albuquerque, N. M., for claimant.

POPE, District Judge. This review complains of the finding of the referee upon two matters, each one purely of fact. The first complaint is because of the finding of the referee in favor of a claim of Mrs. Cox, the wife of the bankrupt, for wages as bookkeeper for her husband. This is composed of two items, one a preferred claim for $255, for the three months immediately preceding the adjudication, and the other a general claim for $3,605 for services to the bankrupt for several years prior to that time at the rate of $85 per month. The other complaint is against the decision of the referee declaring Mrs. Cox to hold as her separate property an undivided one-half interest to lots 7, 8, 9, 10, 11, and 12, in block 3, Brownwell & Lail addition to the city of Albuquerque.

[1] As these matters turn upon decisions purely of fact, all presumptions must, of course, as stated in Collier on Bankruptcy (8th Ed.) page 504, exist in favor of the correctness of the referee's decision. Under such circumstances the duty of a reviewing court is very similar to that of an appellate court in reviewing the verdict of a jury or the decision of a trial judge, where the evidence is conflicting. The reports frequently contain expressions showing the deference paid by reviewing courts to the findings of a referee, who has heard the testimony of the witnesses, and has thus been able to judge, from their conduct and demeanor on the stand, and from other cir-

cumstances before him, and not before the reviewing court, the weight to be given such testimony. Thus in Coder v. McPherson, 152 Fed. 951, 82 C. C. A. 99, decided by the Circuit Court of Appeals for this Circuit, the Circuit Court of Appeals reversed the District Judge and sustained the referee, remarking that the opportunities of the latter for weighing the testimony were superior to those of the District Judge. Giving to the referee's findings in this case, therefore, all of the presumptions which should attach to them, are the two findings complained of to be sustained?

[2, 3] As to the first of these, allowing the claim of the wife of the bankrupt for services, it is undisputed that during all the time for which charges were made she acted as bookkeeper, collector, and assistant in the business for her husband. This situation, placing upon the wife business duties, would, independent of proof of any express contract, raise an implication of compensation. The wife testifies that there was an express agreement that she was to be paid $85 per month. There is no direct testimony contradicting this. It is said, however, that the circumstances are sufficient to overcome this direct testimony on her behalf. It is said that the books of account, containing her account for compensation bear earmarks of fraud, in that they, although covering a period of several years, are all written in the same ink, and with apparently the same pen, and thus bear evidence of having been made up for the occasion. It is also said that this account is not indexed, as are the other accounts in the book, thus indicating it to be an afterthought. It is also pointed out that in a statement made by the bankrupt to one of the Albuquerque bankers, shortly before the adjudication, no mention is made of this indebtedness to the wife, although this statement was made up by the wife in her capacity as bookkeeper.

A careful examination of the book does not lead to the conclusion that the account was fraudulently entered. The penmanship and ink are similar to that utilized in other accounts of about the same date, and the failure to index it cannot, under the circumstances, be given the weight contended for. It was Mrs. Cox's purpose evidently not to insist upon the payment of this money from her husband, unless business should justify it. Indeed, during the entire period she drew only $250 on account. Under such circumstances, the keeping of her account was more in the nature of a memorandum than as a live account, for frequent reference, as in the case of other creditors. While the indexing of these latter was a matter of practical importance, the indexing of her account was not. The same observations apply to the circumstance, upon which the trustee has commented, that part of a page is utilized for her account. The failure of Mrs. Cox to include her account in the statement made to Mr. Strickler is explained by her on the ground that it was not her purpose to insist upon the payment from her husband, had Mr. Strickler given them a further line of credit, enabling them to continue the business. This explanation does not seem unreasonable, and the circumstances do not impress me as precluding the assertion of her claim, when, after a failure to secure an extension of credit, her husband went into bank-

ruptcy. It does not appear that Mr. Strickler or any one else was misled, to act to his injury, by the contents of the statement from Mrs. Cox either in the respect just mentioned or in that to be presently considered. There is, therefore, no element of estoppel operating against the assertion by Mrs. Cox of her claim.

[4] As to the claim that the referee erred in declaring the real estate above mentioned to be the separate property of Mrs. Cox, the facts may be briefly stated. This property was bought the early part of 1905. The record shows that the purchase price was $575, $300 cash, and the balance represented by a note for $275, due June 16, 1905. The initial $300 was contributed by a person other than Mr. Cox, who, according to the testimony of Mrs. Cox, was joining with her in the purchase of the property. The note for $275, above mentioned, was signed by Mrs. Cox and her husband; but Mrs. Cox signed first, and it is testified both by her and her husband that his signature was required only by way of security. When the note became due in June, 1905, it was taken up, Mrs. Cox testifies, with money sent her by her father. There are several circumstances which go to sustain the testimony of Mrs. Cox and her husband, to the effect that this property was being acquired by her individually. The receipt given for the first payment ran to her, and not to her husband. She is the first signer on the note for $275. The deed, when made out, while not in the record, was, as we understand from the argument, made out to her.

As against this it is urged that her father was a mining prospector, who had never upon any other occasion given her anything, and who died not long thereafter, leaving absolutely no estate. It is argued that it is extremely improbable that he could or would have sent her $275 for this purpose. Combatting this, however, there is the improbability that her husband, who likewise seems at all times to have operated upon little capital, would have been able to let her have the money for this purpose. It is also pointed out that in the statement to Mr. Strickler this real estate is listed as the property of Mr. Cox, rather than of the claimant. It is explained by Mrs. Cox, however, that this listing was purely to assist her husband's credit, and with the intention, had Mr. Strickler extended further credit, that this property should go in with the bulk of her husband's estate in securing a restoration of his financial status.

[5] There being, as above pointed out, no element of estoppel, these circumstances do not impress me as throwing effective doubt upon the truth of the testimony of Mrs. Cox. The referee saw and heard her and her husband upon the stand, and in believing them the court cannot say he was wrong.

The orders appealed from will be accordingly affirmed.