### BERKOWITZ v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7148.

Circuit Court of Appeals, Third Circuit.

Nov. 28, 1939.

320

Charles M. Trammell and Donald McGovern, both of Washington, D. C., and William W. Hall, of Pittston, Pa., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and John A. Gage, Sp. Asst's. to Atty. Gen., for respondent.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

In 1892 two persons, a peddler and a housewife, started a retail grocery business in Exeter, Pennsylvania. To this humble enterprise they seem to have contributed about $150 apiece and the credit of one Brown, R. 31. For the next forty-three years they devoted all their judgment and labor in complete cooperation with one another to the conduct and development of their store. The enterprise prospered, and a substantial part of its profits were withdrawn from time to time, and apparently transmuted into cash and real property held in the joint names of the two persons, R. 32, 33. The death of one of those persons, the peddler, raises the question at bar. Is all or a less proportion (presumably half) of the jointly owned property taxable to his estate? Revenue Act of 1926, § 302(e), 26 U.S.C.A. § 411(e). In other words, to whom does the "money or money's worth", or, according to the Regulations, the outlay of funds in the first instance, belong? Treasury Regulations 80, Article 23.

The ruling of the Board of Tax Appeals (whereby all the property is taxed) advances the hypothesis that the surviving person made a free gift of cash and a lifetime of labor to the deceased person, who in turn redonated a corresponding joint interest in property. As the marrow of commercial relationships is generally composed of sterner stuff than mutual gratuity, this explanation strikes one as unlikely, to say the least. It so happens, however, that the two persons, decedent and survivor, are respectively husband and wife. Reciprocal generosity is, therefore, possible in our circumstances as a matter of emotion, and hence of fact. Yet is it, on the other hand, inevitable as a matter of law, and hence of fact? The Board appears to so hold, and this we think is error.

To reach their conclusion they assumed two, as we think, unsound positions. They gave a false emphasis to the petty cash contribution. It is true that the old lady's testimony here was vague. Whose wouldn't be after forty-three years? It is also true, however, that the statute expressly includes "money's worth" as well as "money" and puts the two on a parity.

Further, and more erroneously, their conception of "money's worth" was bottomed on a misapprehension. They searched for a partnership and failing to find it stopped. We believe that the "money's worth" may depend equally as well upon any other sharing of profits.

A wife's right to her "earnings" in and about her husband's business is now recognized (albeit amid some confusion) in many jurisdictions—among them Pennsylvania, Warren, Husband's Right to Wife's Services, 38 Harvard Law Review 421, 440; Smith, Legal and Administrative Restrictions Affecting the Rights of Married Women to Work, 143 Annals of the American Academy of Political and Social Science 255, 259; 23 A.L.R. 18, note. She may recover them from her husband's estate in bankruptcy, Nuding v. Urich, 169 Pa. 289, 32 A. 409; In re Domenig, D.C., 128 F. 146; and see, In re Cox, D.C., 199 F. 952; In re Davidson, D.C., 233 F. 462, or be classified among his "employees", Nesbit v. Nesbit & Casualty Ins. Co., 102 Pa.Super. 554, 157 A. 519, while he may not always be compensated (in tort) for the loss of her services in his business, Standen v. Pennsylvania R. Co., 214 Pa. 189, 63 A. 467, 470, 6 Ann. Cas. 408. Her right to those earnings must rest, however, in contract. Here, concededly, no agreement was made concerning "pay" or "wages". As the surviving spouse testified, "of course a husband and wife don't do that", R. 31. She does, however, make it clear that a more far-reaching understanding governed her business relationship with her husband. She asserts:

"Well, I arranged that we have to work together like partners; we wanted to be partners, half and half". R. 31
\* \* \* \* \* \* \*
"We worked together. We made an agreement that half is mine and half his, and we agreed to it". R. 34

Nothing in the Pennsylvania decisions, above cited, indicates that, to become her separate property, a married woman's earnings must be in the form of a fixed salary, rather than a fixed share of profits. Nor do the Pennsylvania statutes concerning the property and contracts of married women, 48 Purdon's Penna. Stat.Ann. §§ 31, 32, suggest any such limitation. Indeed, they have not been held to preclude the formation of a partnership between husband and wife, DuBois Lumber & Coal Co. v. Strouse, 112 Pa.Super. 6, 170 A. 412; Italo-French Produce Co. v. Thomas, 31 Pa.Super. 503; T. F. Kelley, v. Com'r, 9 B.T.A. 834; John T. Newell v. Com'r, 17 B.T.A. 93; and see, Bernard & Leas Mfg. Co. v. Packard & Calvin, 3 Cir., 64 F. 309

That being so, we can perceive no legal impediment to the effectuation of this utterly reasonable arrangement. Profit-sharing may be an attribute of the partnership relation (especially when the rights of third persons are involved). See 59 Purdon's Penna.Stat.Ann. § 12 (Uniform Law); 1 Rowley, Modern Law of Partnership, Ch. III, secs. 35–104; Sugarman, Law of Partnership, p. 3; Covyngton, Manual of Partnership Relations, p. 14; Strahan & Oldham, Law of Partnership, pp. 40–63. On the other hand, profits can be, and often are, shared by persons who are not partners, cf. Meehan v. Valentine, 145 U.S. 611, 623, 624, 12 S.Ct. 972, 36 L.Ed. 835. The distinction as applied to an apposite situation under the income tax laws is well expressed by Judge McDermott speaking for the Tenth Circuit Court of Appeals: "The error in the conclusion of the Board of Tax Appeals, as we conceive it, is this: Having found, as a matter of law, that the testimony did not establish a general trading partnership, the Board concludes that the profits from the enterprise belonged to her husband and not herself. The conclusion does not follow. If she were a tenant-in-common, a joint-adventurer, or a mining partner, the profits would still be hers and not his. A share-cropper is not a general partner; yet the landlord cannot be compelled to pay taxes on the tenant's share of the crop. \* \* \* The controlling question is whether the profits taxed are those of the petitioner, and not how they are characterized by the Board or the parties". Champlin v. Commissioner, 71 F.2d 23, 26

We agree. The issue here is the ownership of profits, not the capacity in which that ownership was acquired. With that issue clearly in mind, the Board can, and should, determine the existence or non-existence of a profit-sharing agreement. The record and the Board's opinion demonstrate their insistence upon proof of partnership. They rely heavily on the formal bookkeeping of the grocery business and in so doing close the door to con-

siderations and testimony more relevant according to the proper theory.

We may add that the existence of such a contract appears far from unlikely. By hypothesis, since the property is held jointly, the suspicion attaching to these agreements when urged as a basis for recovery against a decedent's estate is lacking here. See In re Barnet's Estate, 320 Pa. 408, 182 A. 699, but cf. Ellis v. Ellis, 51 App.D.C. 383, 280 F. 457. It is also to be observed that the much vexed problem of the allocation of taxable income between spouses has been solved (if any generalization is permissible) by allowing income to be split, where, as here, a part is the product of one spouse's capital or services, M. L. Virden v. Com'r, 6 B.T.A. 1123; J. W. Brackman v. Com'r, 24 B.T.A. 259; H. S. Tuthill v. Com'r, 22 B.T.A. 887; John T. Newell v. Com'r, 17 B.T.A. 93, above cited; T. F. Kelley v. Com'r, 9 B.T.A. 834, above cited; Champlin v. Commissioner, 10 Cir., 71 F.2d 23, above cited; Pugh v. United States, D.C., 48 F.2d 600. Compare Cohan v. Commissioner, 2 Cir., 39 F. 2d 540; J. I. Robertson v. Com'r, 20 B.T.A. 112, 113; W. E. Buchanan v. Com'r, 20 B.T.A. 210. So the suspicion that husband and wife are conniving in a scheme of tax avoidance yields to the economic reality of the wife's actual participation in business, even if it is her husband's. That reality, furthermore, is not rare. Indeed a farflung system of marital property has been based upon it. We quote: "The causes which made the wife the partner of the husband are of an economical nature rather than a moral nature * * * In towns, where family possessions are rarely met with, there is nothing to offer an obstacle to its adoption; the marriage portion of the wife consists in the making of an investment, as would the share of a partner. The benefits resulting from commerce and industry, or acquests which are realized because of them, are shared, because the woman, owing to her fortune or activity, contributes to their production. Community is thus the matrimonial system of merchants". Brissaud, History of French Private Law, sec. 554, pp. 817, 818

See also, Ballinger, Community Property, sec. 11; Lobinger, The History of the Conjugal Partnership, 63 American Law Review 250; McKay, Community Property (2d Ed.) secs. 35–68. The very statute under which we are proceeding gives effect to this "matrimonial system of merchants" by taxing only one-half of community property, Montgomery, Federal Taxes on Estates, Trusts and Gifts, 1938–39, p. 215. That statute purports to reach a shift in economic benefit, see Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758. Here, it must be remembered, the community though not crystallized legally is nevertheless an economic fact.

The decision of the Board of Tax Appeals is reversed and the cause remanded for further proceedings in accordance with this opinion.