THE STATE, for use, etc., *v.* J. A. ANDERSON *et al.*

1. PUBLIC ADMINISTRATOR. *Election of.* Where a public administrator was elected at the October term of the court, instead of at the April term, when his prior term regularly expired, the election was valid and proper, the duty of the court to elect being a continuing one.

2. SAME. *Effect of judgment of county court in appointing to administer an estate.* In granting letters of administration to the public administrator, the county court exercises the precise jurisdiction that it does in ordinary appointments of administrators; in such appointments its jurisdiction is not special and limited; the grant of letters, though erroneously given, remains good and valid until the decree of the court is judicially reversed, either on appeal or petition, and can not be collaterally inquired into.

3. ESTOPPEL. The sureties on the official bond of an officer which has been duly approved and accepted by the proper authority, can not raise the question of eligibility to the office. They, as well as he, are estopped by the bond itself.

4. ADDITIONAL SECURITY ON OFFICIAL BOND. Where, under order of the court, a public administrator was required to strengthen his bond by procuring additional security, the party signing the bond as such additional security was estopped by his own act from denying the validity of the undertaking, and the prior sureties were not relieved from their own voluntary obligation thereby.

5. INSURANCE MONEY. *The right of administrator to collect.* The statute exempting money collected on the insurance policies of a dead man from liability for debt, does not affect the right of the administrator to collect it, nor the liability of himself and sureties to account for it.

---

FROM HELBY.

---

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

W. W. GOODWIN, J. L. GOODLOE and W. F. DIX for complainants.

21—VOL. 16.

C. F. VANCE and WRIGHT & FOLKES for defend-
ants.

FREEMAN, J., delivered the opinion of the court.

Three cases, involving substantially the same ques-
tions, are presented for our decision.    There are some
subordinate or incidental questions involved perhaps
in one or more of the cases, variant one from another,
which will be disposed of in their turn in the progress
of this opinion.    The cases have been argued with
more than ordinary zeal and ability, and at greater
length than was desirable, owing to the large amount
involved in the questions affecting other cases arising
out of the conduct of J. A. Anderson, formerly public
administrator of Shelby county.

The leading facts on which the cases turn are
conceded, or not disputable from the records.    The
bills are filed against J. A. Anderson and the sureties
on his official bond, C. F. Vance and F. M. White,
who originally signed the same, and E. E. Clarke,
who afterward joined in the same, under an order of
the county court requiring the bond to be strengthened
by other names.    This bond, after stating the amount
of the undertaking of the parties to the same, and
binding them for the payment thereof, goes on to
recite the condition as follows:  " That, whereas, the
above bound J. A. Anderson was, on October 4, 1875,
duly elected by the county court of Shelby county,
Tennessee, public administrator of said county for four
years;" and, "now, if the said J. A. Anderson shall
well and truly perform and discharge all the *duties*

which are or may be required of him by law as such public administrator, then this obligation shall be void, otherwise, to remain in full force and effect." It is seen from the above, the condition of this bond is substantially the same as prescribed for ordinary administrators by section 2223, Thompson & Steger's Code, and section 3064, new Code.

It is conceded that the administration of the three estates involved in the litigation was entered upon, in fact, by the said Anderson, under an assumed grant or issuance of letters of administration from the county court, or at any rate under proceedings ordering such letters to issue. In one case it probably only appears to have been done from the petition filed by Anderson asking such letters, and the fact that he took charge of the assets, has failed to account for them, and has appropriated them to his own purposes.

Several defenses are interposed, however, by the sureties to avoid liability on these bonds, Anderson, the principal, having fled the country and making no defense. We will notice the questions made, or so many of them as we deem necessary for the settlement of the rights of the parties. A common defense made in all the cases, and which is precedent to all others, is, that Anderson was not legally elected to the office of public administrator at all, because his election took place at the wrong term of the county court. The facts are, that Anderson had been elected first to the office on the resignation of a former administrator, at the October term, 1871. He was elected, it seems, by oversight for the full term, when the statute, Code,

section 468*a* (T. & S.), new Code, section 547, provided, "on the death, removal or resignation of an administrator, the county court may, at the first succeeding quarterly session, fill the said vacancy for the unexpired term." Under this provision regularly, his term would have expired at the April term, 1871. But as the court, by oversight, failed to elect at that term or at the July term succeeding, the learned chancellor correctly held the duty was a continuing one; it was proper to elect at the October term. It could not be that the Legislature intended the office to remain vacant and its duties not performed because of such failure on the part of the body authorized to elect. Suppose the failure had been caused by an epidemic, such as visited the city of Memphis for the years 1878 and 1879, which prevented the assemblage of the justices of the quarterly court? It could not be insisted that an election at a subsequent term, after the epidemic had ceased, would render such election void. Yet the question of authority is precisely the same in the one case as the other. The language of the statute makes no such exception. It is the duty of courts in such cases to apply the practical judgment to such questions, and follow the spirit and intent, rather than the language literally construed. We can have no doubt that Anderson was legally elected public administrator of Shelby county.

It is probable the provision added to the Constitution of 1870, Article 7, section 5, "that every officer shall hold his office until his successor shall be elected, or appointed and qualified," was intended to meet such

The State, for use, etc., *v.* Anderson.

a case, thus continuing the former officer in office and lengthening his term. In that view, the implication is clear that "an election or appointment," after the regular period, is necessarily contemplated and recognized by the Constitution. So we held in the case of the clerk of the Supreme Court at Knoxville, whose term expired in September, but owing to the change made some years since in the time of holding that court, the court did not meet until the next year, when he was re-elected, and held for six years from the last election.

The case of *Venable & Co.* v. *Curd & White*, 2 Head, 582, conclusively settles the principle that the judgments of a court held at a time not authorized by law are valid and conclusive upon the parties thereto. There is seen no difference in principle as to the validity of the action of a court in the election of an officer and the rendition of a judgment. The reasons in favor of the validity of the act are even stronger in this case than in the former, based on public policy. We may assume, then, that J. A. Anderson held the office created by the act of 1870, of public administrator of Shelby county. It follows, necessarily, there being no dispute as to the execution of the bond by the first sureties, they, at any rate, became bound for the faithful performance of "all the duties which are or may be required of him by law as such public administrator."

This brings us to the most important and difficult question presented in the cases now under consideration, are these sureties responsible on this bond, by its terms

and legal effect, for the faithful administration of the particular estates herein involved?

The statute under which these officers were authorized to be appointed is as follows, and is entitled: "An act to provide for the appointment of public administrators and guardians by the county court. Be it enacted, that the various county courts shall have power, at their January or April quarterly sessions, to appoint a public administrator and a public guardian, who shall hold their offices for four years, and who, before entering upon their duties, shall take the oath now by law prescribed for administrators and guardians, and shall give bonds, with two or more good and approved securities, in such an amount as may be deemed necessary and amply sufficient, in the discretion of the court, to protect the estates, funds and property that may come into their hands, which bond may, from time to time, by said county court, at any of its sessions, be enlarged.

Section 2. "That said administrators and guardians shall, in all things, be governed by and subject to all the laws, rules, duties and penalties prescribed by law for the government of other administrators and guardians, and the management and settlement of estates."

The third section provides "for the appointment of successor, at first succeeding quarterly session after such vacancy occurs."

Section 4. "That should any person or persons entitled to the administration of an estate, or to the guardianship of any minor under existing laws, fail or

neglect to apply to the county court having jurisdiction, and take out letters of administration and guardianship within six months after the death of the intestate, or within three months after the settlement of the estates by the administrator, it shall be the duty of the administrator or guardian herein provided for immediately to enter upon the administration or guardianship of said estates, as the case may be, first applying to the county court for necessary letters of administration or guardianship."

It is seen, from these provisions, that they simply provide for the administration on estates by an officer specially appointed by the county court for that purpose, or rather, first provide for the appointment and qualification of the officer, and then his duties and responsibilities, and when and how he shall enter upon them. He is the officer with the duties imposed by law, or functions designated by virtue of his election and qualification, by taking the oath of office and giving the required bond.

By the fourth section, it is made his duty "immediately to enter upon the administration of the estates specified in the preceding part of the section, but before he can do so, he must first apply to the county court for the necessary letters of administration."

It is seen that the county court exercises the precise jurisdiction in granting these letters that it does in the grant of letters or appointing administrators in ordinary cases, so far as appointing the public administrator to administer any particular estate is concerned. The public administrator, though entitled

after the six months, and on "failure or neglect of"
any person entitled to the administration, "to apply
to the county court having jurisdiction and take out
letters, is not in fact clothed with any power over
the estate until he first apply to the county court
for the necessary letters of administration." This is
requisite to fix the duties and responsibilities of the
administration on him in his official character. When-
ever these letters are granted by that court, his au-
thority to act and official duties attach. His position
before this is identical with the party or person referred
to in the first part of section as "entitled to the
administration of an estate," and who fails to apply
and take out letters of administration. Both have a
right by law to grant of letters. Certain individuals
having certain relations to the intestate are designated
by our law that have the right in ordinary case—
first, the "widow, if she make application for the
same." For want of such application on the part of the
widow, the administration shall be granted to the next
of kin, if such next of kin apply therefor. If neither
widow nor next of kin make application for adminis-
tration, then the same shall be granted to the largest
creditor proving his debt on oath before this county
court or county judge, provided, that when there is
more than one next of kin, the county court may
decide which of them shall be entitled to the admin-
istration: new Code, section 3047. From this it
appears, there are certain requisites to be shown to
the court appointing before any of these parties, having
the right by law, when they are shown, to the ad-

ministration, that is, the party must be shown to be widow, next of kin, or largest creditor, by proving the amount of his debt on oath before the county court or judge. In like manner, the public administrator should show, on his application, the facts required by the statute before he has the right to grant of administration on the particular estate.

But suppose letters are improvidently granted to a party not entitled by law as one, neither widow, next of kin, or the largest creditor; and suppose the fact should appear on the face of the order even appointing, or in the petition filed asking the appointment, and the court still appoints, is such an appointment void or only voidable or revocable on the application of the party by law entitled? All our cases settle that such improvident grants of administration are only revocable by the court granting them, and that not arbitrarily, but on formal application to the court by petition, with notice to the appointee party, and proof of the superior right of the party making the application: *Wilson* v. *Frazier & McKinney,* 3 Hum., 31; *Wilson* v. *Hoss,* 3 Hum., 142. However, it is in the legal discretion of the county court even then to refuse to remove the appointee, looking to the best interest of the estate: *Feltz* v. *Clarke,* 4 Hum., 79.

In addition, by section 2048, new Code, section 2297 (Thompson & Steger's), it is provided: "If any person who claims a right to execute a writ or to administer on the estate of an intestate, thinks himself injured by an order, or for letters testamentary, or of administration, he may appeal to the circuit court of the

county in which the order is made, on giving bond, as in other cases of appeal."

What is the principle that remedies all this? It is that the action of the court in granting letters of administration is the action of a court, and as such the judgments embodying such action settle the right of the parties interested, both the appointee and those who have the right to such appointment, until revoked or reversed and annulled by competent authority for that purpose. The ordinary remedies apply in such case by appeal, and no doubt a writ of error, where the error is apparent on the face of the record. In addition, the extraordinary practice has been adopted by the new Code, section 4980, sub-section 2, section 4201 (Thompson & Steger's), by which the same court, on petition, may revoke its own improvident grant, and annul its own judgment. But it is seen, in the latter case, the appointee must have due notice of the proceeding, thus his right, until it is judicially annulled. All this rests on another well established and clearly adjudicated principle, that in matters of grant of administration the county court is not a court of "inferior jurisdiction, in the legal or technical sense of that term, as used upon this subject at common law. Nor is this jurisdiction special and limited. On the contrary, it is generally original, and, with a few exceptions provided by statute, exclusive. In the exercise of such jurisdiction these courts are entitled to the presumption that what they do is rightly done, and on just grounds; an inferior court, in the technical sense referred to, exercises a special and limited juris-

The State, for use, etc., v. Anderson.

diction, and what it does in the exercise of such jurisdiction, it must show, upon the face of the record, power and authority to do."

We cite the above from the opinion of this court in *Brien* v. *Hart,* 6 Hum., 131. The principle has never been doubted, but always approved in our cases, the apparent exceptions in some cases not being cases of grants of administration, but of other special statutory jurisdiction, such as sales of land for payment of debts: 6 Baxt., 307; *Bowers* v. *Lester,* 2 Heis., 456—a petition for a distributive share by distribution, and the like. The last case, however, was overruled on the point of jurisdiction, in *Stewart* v. *Glenn,* 3 Heis., 582, and the jurisdiction sustained.

All the results of adjudication by a superior court of complete jurisdiction over the person, and the subject-matter attaching to the county court, in granting letters of administration, its decree granting them, however erroneous, must stand on settled principles, never departed from, that we are aware of, until reversed in some of the forms known to our law. If even apparent on its face, a writ of error or other proceeding to annul the same, will always reach it, otherwise it stands as *res adjudicata* in the particular case, and has all the force and effect of such adjudication. Let us apply these established principles to the case in hand. The county court has *exclusive* jurisdiction to grant letters of administration on particular estates to the public administrator. Assume that it construed the statute erroneously, and held that while it was imperative to grant the letters after the six months,

but that it was discretionary where the estate was in danger of being wasted, and no next of kin within the jurisdiction competent to administer, and that this was error, it could only be reversed by a regular proceeding for that purpose, in some one of the forms known to our law. Until this is done the right thus adjudged in the appointee is complete, and his title to the administration good against all the world.

The error that runs through the argument in support of the contention of the defendants in this case is, in confusing the language of the obligation of the bond, that the administrator "shall well and truly perform and discharge all the duties which are or may be required of him by law, as such public administrator," with the other and distinct and different proposition, of the jurisdiction of the county court to appoint to administer the particular estate, and failing to realize or take note of the effect of such order appointing him when made. The force of the argument is ingeniously placed on the words "duties which are or may be required by law," and then assuming that these duties are the basis of the validity of the action of the court in making the appointment. The duties are determined by law, the right to the appointment is determined by the court. It may err in its judgment in deciding upon this right, and if so the parties concerned and affected by the error have their remedy, but while the erroneous judgment remains, it is conclusive on the right adjudged by it.

Suppose, for instance, the next of kin had appeared in the county court and contested the right of the

public administrator, and the decree had shown the ground of the contest, but the court had held that it had · a discretionary power not to appoint an unfit man though next of kin, and had, for the safety of the estate, the right to assign the administration within the six months to the public administrator. Could it be maintained that this judgment would not have been conclusive until reversed or annulled? The plain remedy is given by the section of the Code quoted by appeal. If this be so, under the established practice in such cases, where no citation of next of kin is required in granting letters, and none required in this case by the statute, the grant is equally conclusive and the matter equally *res adjudicata*, whenever the grant is made by the court of the proper county having the jurisdiction to grant administration on the particular estate. We see no answer to this view of the question. Another view gives support to this conclusion: The parties having the adverse right to administration, if any in existence, are the widow, next of kin, or the largest creditor. None of these have contested the right to the administration in any of these cases, but all have, as far as we can see, acquiesced in Anderson's possession. Would it not be a perversion of justice and subversion of sound principle to allow his possession of the office of ad- istrator to be now contested and annulled by the ies on his bond, after he has, by virtue of his ce, received the administration from a court authorized to grant it, has obtained the assets, squandered them, fled the country, and is now called on to

account? Public policy as well as sound principle alike forbid that such a rule should find a place in our jurisprudence. This view finds abundant support in the analogous cases where judges have been appointed in violation of the Constitution, or courts held at times or places not authorized by law; yet, in favor of the public, their acts have always been held valid except on direct contest, and so should the action of the county court be held valid until annulled by the like direct proceeding. Again, it is seen, this statute provides in the same terms for the appointment of a public guardian to take charge of the estates of minors, in case the party entitled to such guardianship fail to apply. Could it be maintained that after the public guardian had received the estate of his ward, held it for years, and converted the fund to his own use, that his sureties could avoid their liability to account, because of any error of judgment, either in law or in fact, in the action of the court in appointing the guardian? Is it more, any way, than the appointment of the wrong party by the court at last, in either case the party entitled not contesting what has been done? The cases in our State are conclusive that such an error is only ground for revocation by the court after notice given to the appointee.

But another principle, based on the clearest justice, is conclusive against the contention of defendants; that of estoppel. It was applied in the case of *McClain* v. *State*, 8 Heis., —; 2 Swan, 618, and in the case, more directly in point, of *Governor* v. *Scanland*, 6

Hum., 195, where it was held that, notwithstanding the election of Scanland to the office of sheriff was utterly void by the express provisions of the act of 1844, and his induction into the office wholly illegal, yet, having under color of his office received a portion of the taxes which he failed to pay over, neither he nor his sureties, who had voluntarily bound themselves for the faithful performance of his duties, could absolve themselves from their obligation, by insisting that his appointment was void, and, consequently, he had no authority to receive the taxes. Unless we overrule this, with like cases, the principle is conclusive of the result in this case.

The same principle is adopted and supported by the decision of other States and text writers. In a late work on Official Bonds, by Murfree, the rule is well stated, as follows: "The sureties on the official bond of an officer, which has been duly approved and accepted by the proper authority, can not raise the question of eligibility to the office. They, as well as he, are estopped by the bond itself: Section 673, citing *Jones* v. *Gallatin Company,* 78 Ky., 491; 54 Vermont Rep., 395; 24 Vest, 362; 30 Vest, 167. There can be no distinction in this case, from the fact that the bond was given generally for performance of his duties in his office, the leading, if not the only duty of that office, being to administer faithfully such estates as might be assigned to his care by the county court. Assuming as the result, beyond question, that Anderson was administrator of these estates, or is to be so treated on the facts of these records, the lia-

bility of the sureties is conclusively settled. The duties of the office are fixed and defined by law, and no one ever questioned that a leading duty is to receive and account for the assets of the intestate on whose estate the administration is had.

We dispose of the subordinate questions presented summarily. First, it is argued that the addition of the name of Clarke to the bond, under the order of the county court requiring Anderson to strengthen his bond, renders the original undertaking void.

We need but say, that section 966, new Code (section 778, Thompson & Steger's), meets this objection, even if there was any thing in it, without such a provision. It is "that all other public officers who are compelled to give official bonds may be required by the court or officer, whose duty it is to approve such bonds, to give additional sureties or new bonds, in the following cases (sub-section 2), where there is good reason to fear the public interest may suffer for want of such additional bond." The fact that the court deemed it proper to require such an additional surety in this case is sufficient to show the necessity for it, and Clarke having voluntarily signed the bond, is estopped to deny the validity of the act under the facts of this case.

In addition, we may say, that cases which hold that such an act will relieve the other parties from their own voluntary obligation (and such cases may be found), belong to a stage of the law when a mere technical logic prevailed, sometimes not only over right and justice, but also against common sense, and

The State, for use, etc., *v.* Anderson.

the plain intent and meaning of what the parties had done. What possible objection could Vance and White have to another party dividing their responsibility on their bond for the proper action of Anderson, as public administrator, or what possible detriment could accrue to them by reason of it? There is nothing in this objection.

We need not discuss the question as to whether Clarke was liable for assets received before he signed the bond. It suffices to say, that he was bound to account for the same to the parties entitled, and his failure to do so makes the sureties liable.

Several questions are made as to liability of sureties for sums received on policies of insurance in several benevolent orders. In the case of Wells, two policies were in existence on the life of the husband, payable to the wife. There can be no doubt the sureties are responsible for the $1,000 received by Anderson, April 30, 1879, he having been re-elected in October, 1875, for four years. He, however, seems to have collected, in fact, $500 after November, 1879. The facts are, he received the policies soon after his qualification in April, 1879. The proof of the Supreme Treasurer of the Order of Working Men, proves from his books the drafts were sent to J. A. Anderson, administrator, on June 2, 1879. Anderson's receipt for them appears to be dated November 18, 1879. The payment in drafts being shown in June, the fact that he did not receipt for them until November, does not change his liability. They came under his control when sent, no doubt, by due course

22—VOL. 16.

of mail. Such at least is the presumption of law, and there is no presumption of promptness in Anderson's acknowledgement of their receipt. We have certainly the proof of payment in June by the treasurer, and this is not rebutted by the date of Anderson's acknowledgment of the same. He should be charged with this sum and his sureties.

A general question is suggested that the proceeds of policies taken out by a husband do not go to, and are not collectable, by his administrator, therefore, not assets for which the sureties are liable. If the question is presented in this case for decision at all, it suffices to say, that sub-sections 3335, 3135, new Code (sections 2478, 2294, Thompson & Steger's), only provide, that such proceeds shall inure to the benefit of his widow and children, and the money be divided among them according to the law of distribution, without being in any manner subject to the debts of the husband, whether by attachment, execution or otherwise. This is simply an exemption from the debts of the husband, and a provision for the distribution immediately to the widow and children. The legal title for its recovery still goes to the administrator. It is not like the case of exempted property under section 3128, new Code (section 2288, Thompson & Steger's), 'where it is provided such property shall not go to the executor or administrator.

This, we believe, disposes of all the questions in these cases. Decrees can be drawn accordingly. Costs paid by defendants.

PETITION TO REHEAR.

Upon petition to rehear, FREEMAN, J., delivered the following opinion:

A petition for rehearing has been presented in these cases. We have carefully examined it and find nothing beyond what was urged on the original hearing, only the same propositions raised in form of presentation.

It is impliedly conceded that the result turns on the question as to whether Anderson's assignment to the administration of the particular estates, and the letters issued to him as administrator, were absolutely void or only erroneous judgments of a court of competent jurisdiction. If the former, then no authority was conferred; if the latter, the appointment was good until revoked.

We have presented our answer to the first proposition in the original opinion. We see no reason to hesitate upon the correctness of the conclusion there reached. The consequences of holding the appointment absolutely void, may well be looked to in support of our conclusion.

Here is an administrator, with grant of authority from the court, having, in this case, authority to grant letters authorizing him to administer the estate. All the debtors of such estates are to deal with him, and he is authorized to collect debts due the deceased purporting to be represented by him. He has collected very large sums and squandered it. Shall all these payments be held void, and yet his letters of administration have never been contested by any one having

a better right, as widow, next of kin, or creditor? Shall all this wrong be done to such debtors at the instance of sureties now, after his term of office has expired, and we hold them exempt, while the orphans whose money has been spent, or creditors who have honestly paid, shall be required to bear the consequences of his official delinquency? Such a holding would shock our sense of justice, and could never be justified, except where there was an imperative mandate of the Legislature requiring it. None such exists, but reason, analogy and sound public policy all accord with the view we have taken of the questions presented in the records before us.

The petition for rehearing is dismissed.