HULL *v.* HULL BROS. LBR. CO.

(*Nashville*, December Term, 1947.)

Opinion filed January 16, 1948.

Rehearing denied February 28, 1948.

J. B. REAGAN, of Jamestown, for plaintiff in error.

WARD R. CASE and ROBERT F. TURNER, both of Jamestown, and KEYS & REDMOND, of Crossville, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The Hull Brothers Lumber Company is a partnership composed of Roy E. Hull and W. E. Hull. The plaintiff, Ellen Hurst Hull, is the former wife of Roy E. Hull. Following her divorce from her husband, she brought suit in the Circuit Court of Fentress County against the defendant Hull Brothers to recover on a contract for services alleged to have been rendered the partnership as bookkeeper. The first count of the declaration charges that she performed the services pursuant to an express contract for a consideration of $3,450, while the second count seeks a recovery on a *quantum meruit* basis.

It appears from the record that the case was tried upon the *quantum meruit* count only.

The plea of defendant avers that "they do not owe the plaintiff anything," and "that plaintiff has heretofore been paid more than the reasonable value of the services rendered" The following special plea was also interposed: "That the services rendered by the plaintiff were rendered as the instance of, and for the defendant Roy Hull, this bookkeeping being part of his individual duties as a member of the partnership; that such services were voluntarily rendered to her husband at the time, for which there is no obligation in law to pay, and any attempt to collect same is void, as against public policy."

At the conclusion of the plaintiff's evidence and again at the conclusion of all the evidence, the defendant moved the Court for a directed verdict in their behalf. This motion was sustained as to Roy Hull and W. E. Hull individually but overruled as to the Hull Brothers Lumber Company. The issues were submitted to the jury under a proper charge, resulting in a verdict for $1,050 for the plaintiff.

Both parties made a motion for a new trial, the plaintiff on the ground that the amount of the verdict was inade-

quate and the defendant on the sole ground that the trial judge was in error in not directing a verdict in their behalf. Both of said motions were overruled and an appeal prayed and granted to the Court of Appeals. That Court was of the opinion that plaintiff's services were gratuitous and that the trial judge should have sustained the defendants' motion to dismiss the case.

The conclusion of the Court is based upon the theory that the plaintiff was the wife of Roy Hull when the services were rendered and that there was no agreement that she should be paid; that she was merely doing some part of the work which was required of her husband as a member of the partnership and the work was gratuitous.

We granted *certiorari* and oral argument was waived. There is but one question made in petitioner's assignment of error, which is, that the Court of Appeals erred in reversing the trial court "upon the ground that there is no competent evidence upon which a verdict for petitioner could be based."

Counsel for petitioner insists that there is material evidence to support the trial court's judgment; that under the married women's emancipation act Code, section 8460, all common-law disabilities are "totally abrogated" and that the wife may testify as to contracts or agreements made with her husband for services rendered a partnership of which he is a member. It is further insisted that the work performed did not arise out of the marital relation, but was independent thereof and in behalf of the partnership. The whole theory of the defense is that the wife was doing her husband's work in the home and that in the absence of an express promise or agreement to compensate her the services must be regarded as gratuitous.

There is little dispute as to the nature or extent of the duties performed by Mrs. Hull. She testified as follows:

"Q. What did your employment consist of?

"A. I did a little of everything, kept books, social security, made trips to ration boards; just anything that needed for me to do and I took care of the shipping of lumber, billing of cars, making invoices, and ordering cars.

"Q. Who signed the bills of lading?

"A. I signed practically all of them myself.

. . . . . .

"Q. I will ask if you wrote the checks and paid the employes?

"A. I didn't do all of that, but a part of it.

"Q. Did you look after the social security?

"A. All the time."

It further appears that she did considerable work in making out income tax returns for the partnership.

There is no denial that the work as outlined by the plaintiff was fully performed as above related and that W. E. Hull knew all about it. He not only admitted knowing about her work, but stated as a fact that it continued for a period of twenty-one months. While most of the work was done in the home, there were times when Mrs. Hull had to make trips from Monterey to Crossville, Tenn., on the business of the firm.

An examination of the testimony of both Roy Hull and his brother W. E. Hull shows that prior to the time Mrs. Hull was asked to perform this service they had one Sherman Voiles employed at a salary of $75 per month. W. E. Hull was asked:

"Q. Did he (Sherman Voiles) in addition to the other things on the outside do all the work that Mrs. Hull claims to have done?

"A. Yes, sir, made out the social security reports and income tax reports and took care of a lot of correspondence.

"Q. You say Voiles did the same work that Mrs. Hull did and you paid him $75.00 a month? A. Yes, sir."

The plaintiff testified in rebuttal that she made demands for payment for her services before she instituted her suit for divorce. Her husband Roy Hull had stated she had never demanded payment, but did the work voluntarily. While there is no proof of an express agreement that plaintiff was to be paid a specified salary, there is material evidence that her services were reasonably worth as much or more than the firm had paid Voiles. Are these services to be considered gratuitous as a matter of law? We think not.

It must be conceded that all services performed by the wife in the home and which arise out of the marital relationship must be considered as gratuitous. The cases of Taylor v. Lincumfelter, 69 Tenn. 83, and Gorrell v. Taylor, 107 Tenn. 568, 569, 64 S. W. 888, cited by the learned Court of Appeals, are not applicable although they announce a sound principle of law.

In the first case the parties, brother and sister, had lived together for forty years, during which time the brother accumulated considerable property. The sister claimed a one-half interest in the property on the score of services rendered her brother under an implied contract. Her claim was denied.

In Gorrell v. Taylor, supra, the Court denied the right of a child to recover for services rendered a parent while living in the home of the latter. It was there held that he must overcome the presumption that the services were gratuitously rendered from motives of affection and duty "by showing either an express contract, or such exceptional facts and circumstances as will establish an inten-

tion on the one part to charge and on the other to pay, notwithstanding the relation of kinship.''

The foregoing rule might well be considered in determining the rights of the plaintiff against the defendant partnership. In fact, it was considered by the jury under the charge of the trial judge.

While the married women's emancipation act abolished certain common-law obligations of the wife and conferred upon her certain lawful rights as a *feme sole*, such as the right to own and hold property independent of the marital relation and to bind herself by contract with reference to such property, the husband is still the head of the house, and the wife is still in duty bound to render services in the home for the promotion of its comfort and happiness and which the law presumes to be gratuitous.

We find a wide diversity of opinion as to the right of the wife under modern statutes to recover for services rendered the husband in his business. In *Standen* v. *Pennsylvania R. Co.*, 214 Pa. 189, 63 A. 467, 470, 6 Ann. Cas. 408, the Court adheres to the common-law rule that in the absence of an agreement ''the wife's earnings continue to belong to the husband, and neither his wife nor her creditors can assert a right to them by an action at law or otherwise. Other cases are found to the same effect, while many favor her right to recover where the evidence overcomes the presumption that her services were rendered gratuitously. See 23 A. L. R. 23. Thus in the case of *Re Cox D. C.*, 1912, 199 F. 952, it was held that merely placing upon the wife duty of keeping the books and accounts for her husband's business, which duty she performed until his failure, was sufficient to raise an implied promise to compensate her therefor, and an allowance of wages was made in the bankruptcy

proceedings. See also *Powers* v. *Fletcher*, 84 Ind. 154; *Benson* v. *Morgan*, 50 Mich. 77, 14 N. W. 705.

In 73 A. L. R., p. 1520, it is said by the Annotater: ''In jurisdictions where the wife is authorized generally to make contracts, it has been held that she may contract with her husband to render services for him in connection with his business, these being outside of the purely domestic relations implied in the marital contract.'' Citing cases.

In cases holding such contracts to be unenforceable it is thought that the statutes in these jurisdictions have not sufficiently relaxed the common-law rule as to permit the wife to contract with her husband at all.

██ In giving consideration to our statute emancipating married women, we have held that it completely destroys the marital unity in its relation to property rights. *Jefferson County Bank* v. *Hale*, 152 Tenn. 648, 280 S. W. 408; *Morton* v. *State*, 141 Tenn. 357, 209 S. W. 644, 4 A. L. R. 264. It is true the statute does not expressly authorize her to contract with her husband. We think it is broad enough, however, to confer upon her the right to contract to render services to a business in which he has an interest. She is clothed with the ''capacity to make contracts and to do all acts in reference to property which she could lawfully do, if she were not married.'' Code, Section 8460.

In *Vick* v. *Gower*, 92 Tenn. 391, 21 S. W. 677, 678, Mr. Chief Justice Lurton, speaking for the Court, said: ''The power of the wife to contract with her husband with reference to her separate personal estate has long been recognized by courts of equity. With regard to that estate husband and wife have been regarded in equity as distinct persons. She might contract with him in regard to it, *lend it to him, or give it to him.*'' (Italics ours.)

██ Since courts of equity have given full recognition to the right of the wife to contract with her husband with reference to her personal property, and our emancipation statute is held to abolish all common-law disabilities and confer upon her the legal status of a *feme sole*, we hold that her earnings are a part of her separate personal estate and belong to her to the exclusion of all common-law rights of her husband.

While certain common-law duties and obligations of the husband and wife are still in force, such as the duty of the husband to support his wife and the obligation of the latter to render freely all services, such as, under the common-law, were presumptively rendered out of love and affection, he cannot claim the fruits of her labor, rendered a business enterprise in which he may have an interest, as being entirely personal and gratuitous. To so hold would operate to defeat the right of the wife to her earnings contrary to both the letter and spirit if our emancipation statute, and to this we cannot give our assent.

The learned Court of Appeals seems to have made no distinction between services which have always been presumed personal and gratuitous, because they arise out of the marital relation, and services which pertain to business and commerce.

In *Key* v. *Harris*, 116 Tenn. 161, 92 S. W. 235, 237, 8 Ann. Cas. 200, the Court points out the reason of the rule, why certain services are presumed to be gratuitous. It is a good statement and is still the law of Tennessee. "It is said that the reason underlying the rule is that family life abounds in acts of reciprocal kindness which tend to promote the comfort and convenience of the family, and that the introduction of commercial considerations into the relations of persons so closely bound together would expel this spirit of mutual beneficence and to that extent

mar the family unity." In this case the Court upheld the right of a sister to recover on an implied contract for services rendered an invalid sister.

 Now in the instant case it appears that Mrs. Ellen Hull was, by her husband, brought into the partnership as an active participant in its affairs, she performing most of the duties that had been assigned to a former employe. We do not think that such services are presumed to be personal to the husband and hence should inure to the benefit of the partnership as a matter of law. They relate remotely and indirectly to the "comfort and convenience of the family". Conceding, but not deciding, that the services were of such a nature as could be considered presumptively gratuitous, this presumption is rebuttable. When the jury came to consider this issue of fact, under a charge which substantially followed *Gordell* v. *Taylor*, *supra*, their verdict was adverse to the contention of the defendants. In other words, the jury found that any presumption that Mrs. Hull was serving her husband personally and gratuitously was overcome by competent proof. We think there is material evidence to support this verdict.

The petitioner's assignment of error is sustained, the judgment of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

All concur.