**Eva Hornsby WILLS**

v.

**Burton FRANKLIN, Administrator of Estate of David L. Davis, deceased.**

**Peggy Wills DAVIS**

v.

**Burton FRANKLIN, Administrator of Estate of David L. Davis, deceased.**

Civ. Nos. 1895, 1896.

United States District Court
E. D. Tennessee, S. D.

Nov. 20, 1953.

Gleason & Painter, Rossville, Ga., Frazier, Roberts & Weill, Chattanooga, Tenn., for plaintiffs.

Noone, Tanner & Noone, Chattanooga, Tenn., for defendant.

DARR, Chief Judge.

The defendant has moved for a new trial in each of these cases. There are assignments that the verdicts are not supported by any evidence; that they are excessive, contrary to the law and the evidence; that any negligence of which the decedent David L. Davis might have been guilty was not the proximate cause of the injuries; that the plaintiffs were guilty of contributory negligence.

These matters were all submitted to the jury under a charge to which there was no exception, and the jury has found the issues in favor of the plaintiffs. The Court has given careful consideration to the evidence and is of the opinion that it amply justifies the verdicts.

The defendant's 7th, 8th and 9th grounds of error relate to the refusal of the Court to permit a special defense to be filed, setting up that there was pending in the Circuit Court of Hamilton County, Tennessee, on appeal, an attack on the appointment of the defendant as administrator; and that if there was an adverse decision in said circuit court, there would be a further appeal to the appellate courts at Knoxville. Said special defense also included a charge that the plaintiff and defendant were guilty of collusion; and that the trial of the case should be postponed or deferred until the final decision as to the validity of defendant's appointment was determined. It is alleged that it was error for the Court to try the case before it was determined whether the defendant is the administrator of the estate of David L. Davis, deceased.

■ These grounds of the motion are without merit. They amount to a collateral attack on the judgment of the court appointing the administrator, and collateral attacks are not permitted. Eller v. Richardson, 89 Tenn. 575, 15 S.W. 650; Bellenfant v. American National Bank, 184 Tenn. 50, 54, 195 S.W.2d 30.

The judgment of the county court appointing an administrator is binding on all the world until reversed on direct attack or appeal or writ of error. Bellenfant v. American National Bank, supra.

■ The grant of letters, though erroneously given, remains good and valid until the decree of the court is judicially reversed, either on appeal or petition, and cannot be collaterally inquired into. State v. Anderson, 84 Tenn. 321.

■ Writs of error lie from the judgments of the county court to the circuit or proper appellate court in all cases where an appeal in the nature of a writ of error could have lain. Williams Tenn. Code, section 9063.

■ The writ of error does not supercede the execution of judgment unless a judge of the appellate court is of opinion that there is error, and shall order a supersedeas to issue. Williams Tennessee Code, section 9065.

■ The proposed amendment to the answer raising this question was not offered until the day the case was set for trial on June 23, 1953, while the letters of administration were issued to the defendant on April 30, 1953. The proposed amendment does not show the grounds upon which the letters of administration are being challenged in the state courts; nor does counsel for defendant say whether in his opinion the grounds have merit. No proper basis is laid for postponing the trial here to await a procedure so tenuous and speculative.

As to the case of Peggy Wills Davis, the defendant says the Court erred in finding and holding that it was not against the public policy of the State of Tennessee and that the case could be maintained as brought.

The plaintiff is the widow of David L. Davis, and the suit against his adminis-

trator is therefore, in effect, a suit in tort by her against her husband, which is not permitted in Tennessee.

This defense was made in the answer, and on motion of the plaintiff, was stricken pursuant to this Court's memo of June 22, 1953.

The suit is predicated upon a statute of North Carolina in which state the accident occurred, and it is conceded that the North Carolina law permits a suit in tort by one spouse against the other.

It is conceded that this statute would permit the present suit to be brought in North Carolina; and that an action brought in Tennessee therefor would be controlled by the North Carolina law.

It is well settled in Tennessee that the law of the place where the tort is committed determines the rights of the parties affected thereby. Parsons v. American Trust & Banking Co., 168 Tenn. 49, 73 S.W.2d 698; Hartman v. Duke, 160 Tenn. 134, 22 S.W.2d 221; Whitlow v. Nashville, C. & St. L. Ry. Co., 114 Tenn. 344, 84 S.W. 618, 68 L.R.A. 503.

The defendant says, however, that in Tennessee a wife may not maintain an action against her husband for injuries to her person during coverture; and that such being the law of Tennessee the present action may not be maintained in a Tennessee court to enforce rights under the laws of North Carolina because that would be against the public policy of Tennessee. In other words, the defendant insists that the rights of parties existing under the laws of other states may not be enforced in Tennessee if contrary to the public policy of the laws of Tennessee.

What then are the rights which are contrary to the public policy of the laws of Tennessee? Is the mere fact of non-conformance with the laws of other states determinative? If that be true, then there is no basis for the rule of lex loci. If the lex loci differs from the lex fori, it would be idle to say that in tort actions the lex loci would control except when it differed from the lex fori—in other words, the lex loci would control if consistent with the lex fori. This would seem to be one of the legal absurdities which need not be indulged.

The Supreme Court of the United States quoted with approval, in Northern Pacific Railroad v. Babcock, 154 U.S. 190, 197, 198, 14 S.Ct. 978, 980, 38 L.Ed. 958, the following: " 'The statute of another state has, of course, no extra-territorial force, but rights acquired under it will always, in comity, be enforced, if not against the public policy of the laws of the former. * * * But it by no means follows that, because the statute of one state differs from the law of another state, therefore it would be held contrary to the policy of the laws of the latter state. Every day our courts are enforcing rights under foreign contracts where the lex loci contractus and the lex fori are altogether different, and yet we construe these contracts and enforce rights under them according to their force and effect under the laws of the state where made. To justify a court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that, for some other such reason, the enforcement of it would be prejudicial to the general interests of our own citizens. If the state of Iowa sees fit to impose this obligation upon those operating railroads within her bounds, and to make it a condition of the employment of those who enter their service, we see nothing in such a law repugnant either to good morals or natural justice, or prejudicial to the interests of our own citizens.' "

It may therefore safely be said that the public policy of the laws of Tennessee are not established and determined by the fact that its court decisions differ from the laws of North Carolina.

In Home Beneficial Ass'n v. White, 180 Tenn. 585, 177 S.W.2d 545, the Tennessee "Public Policy" is defined as follows: "The state's 'public policy' is to be found in its Constitution, laws, judicial

decisions, and applicable rules of common law; 'public policy' being practically synonymous with 'public good'."

The public policy of Tennessee may thus be found in the Constitution and laws of Tennessee as well as in its court decisions. And the state court itself has said it was practically synonymous with "public good". This is strikingly similar to the language of the U. S. Supreme Court, Northern Pacific Railroad v. Babcock, supra, that for a foreign law to be unenforceable as against the public policy of the forum state, it must be "against good morals" or "natural justice".

The "public policy" of Tennessee with respect to the rights and disabilities of married women seems to be well settled by Chapter 26 of the Public Acts of 1913 and Chapter 126 of the Public Acts of 1919, being section 8460 of Williams Code of Tennessee, generally known as the Married Woman's Emancipation Act.[1]

■ This Act removes from married women all disabilities on account of coverture and the common law with respect to their property, vesting her with the same capacity to acquire, hold, manage, control, use, enjoy and dispose of all property, real or personal, in possession, and to make any contract in reference to it, and to bind herself personally, and *to sue* and *be sued* with all the rights and incidents thereof, as if she were not married. A right of action is property. 73 C.J.S., Property, § 9, p. 175.

■ It is true that this statute has been construed by the Tennessee court as not authorizing one spouse to sue another in tort, Tobin v. Gelrich, 162 Tenn. 96, 34 S.W.2d 1058; Lillienkamp v. Rippetoe, 133 Tenn. 57, 179 S.W. 628, L.R.A.1916B, 881, the reason assigned in the Tobin case being "the nature of the relation, the unity of interest of husband and wife in each others respective rights and duties". The reasons for denying actions in tort to be maintained by one spouse against the other is stated by Chief Justice Beard in McKelvey v. McKelvey, 111 Tenn. 388, 391, 77 S.W. 664, 665, 64 L.R.A. 991, as follows: "This holding rests in part upon their unity by virtue of the marriage relation, which would preclude the one from suing the other at law, and in part upon the respective rights and duties involved in that relation."

The foregoing Married Woman's Emancipation Act has been held to permit the wife to sue the husband for a resulting trust on her property, where deed fraudulently taken in his name, Justice v. Henley, 27 Tenn.App. 405, 181 S.W.2d 632, to permit the wife to maintain an action of unlawful detainer for her property, Hall v. Hall, 193 Tenn. 74, 241 S.W.2d 919; to permit the wife to sue for her earnings from a firm of which her husband was a partner. Hull v. Hull Bros. Lbr. Co., 186 Tenn. 53, 208 S.W.2d 338. And in fact, this Act totally abrogated the common-law status of marital unity in its relation to property rights. Hull v. Hull Bros. Lbr. Co., supra; Elliott v. Markland, 26 Tenn. App. 222, 170 S.W.2d 662.

The common-law reason for not permitting a suit by one spouse against another seems to have been the unity of husband and wife, whereby they were

---

[1]. Married women are fully emancipated from all disability on account of coverture, and the common law as to the disability of married women and its effects on the rights of property of the wife, is totally abrogated, except as set out in the next following section and subsequent section; and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and to do all acts in reference to property which she could lawfully do, if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy and dispose of, all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued, with all the rights and incidents thereof, as if she were not married.

deemed and treated as one person. This was effectually eliminated when the Emancipation Act permitted every type of a suit to be brought by a wife against her husband except suits in tort. She may sue him for dishonesty, for unlawfully taking her property, for debts he refuses to pay, or any other such matters even though they would involve the "public scandal of the family discord", as effectually as the bringing of a tort action.

And this Court sees no necessary distinction between actions in tort and actions in other respects between husband and wife, in so far as public policy of the law is involved. Actions in tort can hardly be said to be any more immoral, any more violative of justice than actions for fraud or breach of property rights.

It may be observed that while the Tennessee court has held that the Emancipation Act, supra, related only to the property, real and personal, of the wife, and actions thereabout, and did not affect actions in tort, nevertheless the Tennessee court in Parsons v. American Trust & Banking Co., supra, 168 Tenn. at page 56, 73 S.W.2d at page 701, quoted with approval from an opinion of Cardozo, J., in the case of Loucks v. Standard Oil Co., 224 N.Y. 99, 120 N.E. 198, as follows (italics added): " 'A right of action is property. If a foreign statute gives the right, the mere fact that we do not give a like right is no reason for refusing to help the plaintiff in getting what belongs to him. We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. * * * The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notice of expediency or fairness. They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal'."

The Supreme Court of Tennessee, while thus recognizing that a right of action is "property", nevertheless does not give to it the married woman's prop-erty rights to which the statute entitles her.

It was in Parsons v. American Trust & Banking Co., supra, wherein the quotation from Mr. J. Cardozo was inserted and quoted, that the Tennessee Supreme Court recognized the principle that an action based on the law of another state but not recognized or maintainable under the Tennessee law is not per se contrary to Tennessee public policy.

In the Parsons case, supra, a widow brought an action in Tennessee for the wrongful death of her husband against the administrator of the alleged wrongdoer. Such an action was authorized by the laws of Florida where the tort was committed, but was not authorized by the laws of Tennessee where the cause of action died with the death of the wrongdoer. It was held that the suit was not contrary to the public policy of Tennessee, and was maintainable. Said the court, 468 Tenn. at page 55, 73 S.W.2d at page 700, "In so far as we have been able to discover, the appellate courts which have ruled the question in recent years have enforced the cause of action against the administrator of the estate of the wrongdoer when given by the law of the state where the act was committed, notwithstanding the law of the forum did not permit its survival". (Then cases from other jurisdictions are cited.)

The Court is of the opinion that the rule in Tennessee that one spouse may not sue the other spouse in tort is based not upon any public policy of the law, but upon the common-law unity of the husband and wife. The reason assigned by the Tennessee Supreme Court why the Emancipation Statute did not abrogate the rule as to tort actions between the spouses was that the statute "does not accomplish any abrogation of the common-law rule in respect of actions for tort by either spouse against the other", and " 'a statute will not be construed to alter the common law, further than the act expressly declares or than is necessarily implied from the fact that it covers the whole subject-matter.' " Lillienkamp

v. Rippetoe, supra [133 Tenn. 57, 179 S. W. 629].

But even if there is a public policy in Tennessee against one spouse suing the other, it cannot be said to be such a strong public policy as would preclude the right of one spouse to sue the other under the laws of the place where the cause of action arose. To permit such a suit is not against good morals, or natural justice, or any other situation that would harm the public good of the citizens of Tennessee.

The Court being satisfied with the determination of the jury on the factual questions and that the legal questions presented in the motion are without merit, directs that the motion for a new trial in each case be overruled.

Order accordingly.